IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARYOUSH TAHA, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA STATE POLICE | : | |
| COMMISSIONER FRANK NOONAN, et al., | : | No. 12-6867 |
| | : | |
| Defendants. | : | |

**ORDER**

AND NOW, this     day of            , 2013, upon consideration of Commissioner Frank Noonan's Motion to Dismiss Plaintiff's Amended Complaint and Bensalem Township's Cross-Claim, it is hereby ORDERED that the Motion is GRANTED. Plaintiff's Amended Complaint and Bensalem Township's Cross-Claim are hereby dismissed with prejudice as against Noonan.

BY THE COURT:

_____
Savage, J.

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARYOUSH TAHA, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA STATE POLICE | : | |
| COMMISSIONER FRANK NOONAN, et al., | : | No. 12-6867 |
| | : | |
| Defendants. | : | |

**NOONAN'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
AND BENSALEM TOWNSHIP'S CROSS-CLAIM**

Frank Noonan, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), hereby moves to dismiss

Plaintiff's Amended Complaint and Bensalem Township's Cross-Claim, for the reasons stated in

the attached Memorandum of Law and in the Bucks County Motion to Dismiss (doc. no. 26),

incorporated herein by reference pursuant to Fed. R. Civ. P. 10(c).

Wherefore, Frank Noonan requests that Plaintiff's Amended Complaint and Bensalem

Township's Cross-Claim be dismissed.

                                                KATHLEEN G. KANE
                                                ATTORNEY GENERAL

                                                /s/Barry N. Kramer
                                                Barry N. Kramer
                                                Chief Deputy Attorney General
                                                Attorney I.D. No. 41624

Office of Attorney General
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107
Phone: (215) 560-1581
Fax:    (215) 560-1031

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARYOUSH TAHA, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA STATE POLICE | : | |
| COMMISSIONER FRANK NOONAN, et al., | : | No. 12-6867 |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF NOONAN'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
AND BENSALEM TOWNSHIP'S CROSS-CLAIM**

**I.   INTRODUCTION**

In this putative class action, Daryoush Taha seeks damages and affirmative injunctive relief from defendants Bucks County, which operates Bucks County Correctional Facility ("BCCF"), and BCCF's Warden, Terrance Moore; Bucks County Department of Corrections Director William Plantier; Bensalem Township and Bensalem Township Police Department ("Bensalem PD") employees Director of Public Safety Steven Moran and Lt. Christopher Barry; Pennsylvania State Police ("PSP") Commissioner Frank Noonan; and Mugshots.com, a private corporation. He sues the governmental officials in both their individual and official capacities. Taha purports that BCCF failed to expunge the criminal record of his 1998 arrest by the Bensalem PD as ordered by the Bucks County Court of Common Pleas and that thereafter his "mug shot" and arrest record were published and remain on the BCCF website and, pursuant to the information on the BCCF website, the Mugshots.com website.

Taha alleges violation, pursuant to 42 U.S.C. § 1983, of the Due Process clause of the Fourteenth Amendment and of Monell v. Department of Social Services, 436 U.S. 658 (1978), and, under state law, violation of the Pennsylvania Criminal History Records Information Act, 18 Pa.C.S. §§ 9101-83 ("CHRIA"). Federal jurisdiction is based on diversity of citizenship and the assertion of a federal question. Amended Complaint, ¶¶ 23-24.

There is no basis for suing Commissioner Noonan in either his individual or official capacity for either damages or injunctive relief under federal or state law. He now moves to dismiss Plaintiff's Amended Complaint and Bensalem Township's Cross-Claim. The official records attached to plaintiff's Amended Complaint reflect that the PSP expunged plaintiff's criminal record in 2000. Amended Complaint, Exhibit G. It is not disputed that plaintiff's arrest record remains expunged in PSP's CHRIA database; a search for him results in a "no record" response. Commissioner Noonan may not be held liable, in summary, because

- The Eleventh Amendment bars federal court jurisdiction over Noonan in his official capacity for the § 1983 claims;

- Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), holds that Noonan in his official capacity may not be sued for damages under § 1983;

- Noonan is sued in his individual capacity only because he is PSP Commissioner managerially responsible for the operations of the PSP. However, there is no respondeat superior liability in § 1983 action and Noonan has no personal knowledge of or involvement in the events giving rise to the litigation;

- Monell claims do not extend to state officials;

- Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984), and state

sovereign immunity bar the state law CHRIA claims.[1]

## II.     ARGUMENT

### A.     Standard on a Motion to Dismiss

**Rule 12(b)(1), Lack of Jurisdiction**

A Rule 12(b)(1) motion is the proper mechanism for asserting that Eleventh Amendment immunity bars federal jurisdiction. Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 n. 2 (3d Cir. 1996), citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984) (Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction).

**Rule 12(b)(6), Failure to State a Claim**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). See also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009). The Supreme Court in Iqbal clarified that the decision in Twombly "expounded the pleading standard for 'all civil actions.'" Iqbal, 556 U.S. at 684. The Court explained that although a court must accept as true all the well-pleaded factual allegations, that requirement does not apply to legal conclusions; the pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 684.; Santiago v. Warminster Tp., 629 F.3d 121, 128 (3d Cir.2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). See also Fowler, 578 F.3d at 210-11 (to the extent that plaintiff's pleading characterizes defendants' conduct using the legal terms of art at issue, including allegations of

---

[1] Although not presently asserted, Noonan does not waive any statute of limitations defense.

5

willfulness, conscience-shocking and deliberate indifference, the court should not credit such legal conclusions). See Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012). To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 674..

**B.      Summary of Alleged Facts**

On or about September 29, 1998, plaintiff was arrested and processed by the Bensalem PD and later transported to BCCF. Amended Complaint, ¶¶ 32-33. Bensalem PD provided plaintiff's arrest record, including his photograph, to the prison, where plaintiff was again photographed. Id., ¶¶ 34-35. On or about January 5, 1999, plaintiff was placed in Accelerated Rehabilitative Disposition ("ARD") for one year in relation to one of the five criminal counts; the other charges were discharged or non prossed. Id., ¶¶ 36-37. Plaintiff successfully completed his period of ARD and on or about January 31, 2000, the Bucks County Court of Common Pleas ordered Bensalem PD, among other agencies, to expunge plaintiff's "arrest record and other criminal records"; to "request, in so far as it is able, the return of such records as it has made available to Federal and State agencies and that it destroy such records on receipt thereof ... [and] file with the Bucks County Clerk of Courts -Criminal Division, an Affidavit stating that said records have been EXPUNGED or destroyed within 30 days of the date of this Order." Id., ¶¶ 39-41, Ex. C. The Order did not direct PSP to take or refrain from taking any action with respect to plaintiff. Id. The records attached to plaintiff's Amended Complaint reflect that the PSP timely expunged plaintiff's criminal record in 2000. Amended Complaint, Exhibit G.

During the course of communications with plaintiff's counsel, Lt. Barry advised that the Bensalem PD complied with the Expungement Order and removed plaintiff's arrest record from its publicly accessible files, although the report had been preserved in a secure location to defend

plaintiff's civil action against the Bensalem PD. Id., ¶¶ 44-47. On or about June 27, 2000, Lt. Barry forwarded to plaintiff's counsel verifications that the PSP and Federal Bureau of Investigation had expunged plaintiff's criminal records from their files. Id., ¶ 49, Exhibit G. Plaintiff's criminal record history information and photograph are presently available and publically accessible on the BCCF website and, by way of the information BCCF's website, on Mugshots.com's website. Id., ¶¶ 48-49, 52-53-54, 59-60. It is not disputed that plaintiff's arrest record remains expunged in PSP's CHRIA database; a search for him results in a "no record" response. Noonan was appointed PSP Commissioner in 2011. Exhibit A, hereto.[2] This public document is also available at the PSP's website,

www.portal.state.pa.us/portal/server.pt?open=512&objID=4451&&PageID=472753&level=2&css=L2&mode=2.

C.   **The Eleventh Amendment Bars § 1983 Due Process and <u>Monell</u> Claims Against Noonan in his Official Capacity**

Plaintiff sues Noonan in his official capacity under § 1983 in Count V, a claim under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), for PSP's alleged unconstitutional policy and practice of failing to comply with court orders directing expungement of criminal records. It is unclear if plaintiff includes Noonan at all in Count IV, a procedural due process claim, since Noonan's name is not included in the caption thereto. In any event, plaintiff may not sue Commissioner Noonan in his official capacity for any relief in any § 1983 claim.

---

[2] In ruling on a motion to dismiss, a district court may rely on the complaint, exhibits attached thereto, matters of public record and documents integral to or relied upon in the complaint without converting the motion to dismiss into one for summary judgment. <u>Mayer v. Belichick</u>, 605 F. 3d 223, 230 (3d Cir. 2010); <u>Kernaghan v. BCI Communications</u>, 802 F. Supp. 2d 590, 593 n. 2 (E.D.Pa. 2011).

Absent consent by the State, the Eleventh Amendment[3] bars suits under § 1983 in federal court by a private party against states, state agencies and state officials in their official capacities. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Pennhurst State School v. Halderman, 465 U.S. 89, 97 (1984); Kentucky v. Graham, 473 U.S. 159, 169 (1985) (state officials sued in their official capacities are immunized from federal suit); Melo v. Hafer, 912 F.2d 628, 642 (3d Cir.1990), aff'd, 502 U.S. 21, 31 (1991). The bar extends to suits against departments or agencies of the state having no existence apart from the state. Laskaris v. Thornburgh, 661 F. 2d 23, 25 (3d Cir. 1981), citing Mt. Healthy City Board of Ed. v. Doyle, 429 U.S. 274, 280 (1977). As when the State itself is named as the defendant, a suit against a state agency or official in his official capacity is barred, regardless of the relief requested. Seminole Tribe, 517 U.S. at 58. See also Pennhurst State Sch. & Hosp., 465 U.S. at 101; Green v. Mansour, 474 U.S. 64, 68 (1985); Kentucky, 473 U.S. at 167 n. 14; Edelman v. Jordan, 415 U.S. 651, 667 (1974); Papasan v. Allain, 478 U.S. 265, 276 (1986); Cory v. White, 457 U.S. 85, 91 (1982); Lavia v. Pennsylvania Department of Corrections, 224 F. 3d 190, 195 (3d Cir. 2000).

Neither supplemental jurisdiction nor any other basis of jurisdiction, including diversity jurisdiction, overrides the Eleventh Amendment. Pennhurst, 465 U.S. at 121. See Moor v. County of Alameda, 411 U.S. 693, 720 (1973) (the federal courts cannot entertain a suit in diversity jurisdiction against a state or its alter ego); Blake v. Kline, 612 F.2d 718, 726 (3d Cir. 1979) (same); Krisel v. Duran, 386 F.2d 179, 181 (2d Cir. 1967). Moreover, § 1983 does not override the Eleventh Amendment. Quern v. Jordan, 440 U.S. 332, 341-42 (1979). While a state

---

[3] The Eleventh Amendment provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."


may consent to be sued in federal court, e.g., Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000); Seminole Tribe, 517 U.S. at 55-56; Pennhurst, 465 U.S. at 99 (waiver must be "unequivocally expressed"), Pennsylvania has expressly withheld consent. 42 Pa. C.S. § 8521(b); 1 Pa. C.S. § 2310. See Laskaris, 661 F. 2d at 25.

Commissioner Noonan is an official and employee of the PSP, an arm of the Commonwealth's executive branch of government. Amended Complaint, ¶ 3. See 71 P.S. §§ 61, 732-102; Lavia, 224 F.3d at 195; Zelinski v. Pennsylvania State Police, 282 F. Supp. 2d. 251, 264 (M.D. Pa. 2003), aff'd in part, vacated in part on other grounds, 108 Fed Appx. 700 (3d Cir. 2004). The Eleventh Amendment bars any § 1983 claim against Noonan in his official capacity and Counts IV and V, regardless of the relief requested, should be dismissed as against him.

**D.     Under Will v. Michigan Dep't of State Police, Plaintiff Cannot State a § 1983 Claim for Damages Against Noonan in his Official Capacity**

42 U.S.C. § 1983 provides, in pertinent part, that

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. (emphasis added).

In Will v. Michigan Dep't of State Police, 491 U.S. at 69-71, & n.10, the Supreme Court held that States, State agencies and state officials in their official capacity are not considered "person[s]" amenable to a suit for damages under § 1983.   Noonan is a state official sued in his official capacity.  Amended Complaint, ¶ 3. See 71 P.S. §§ 61, 732-102; Lavia, 224 F.3d at 195; Zelinski, 282 F. Supp. 2d. at 264 n. 14. Therefore, Noonan may not be sued for damages under § 1983 and Counts IV and V claims should be dismissed as against him.

**E.      The Amended Complaint and Cross-Claim Cannot State a § 1983 Claim for damages Against Noonan in his Individual Capacity because Noonan was Not Personally Involved In the Events Giving Rise to the Litigation**

In Count V (Monell), and possibly Count IV (due process), plaintiff sues Noonan in his individual capacity only because of his supervisory role as PSP Commissioner. Amended Complaint, ¶¶ 3, 50-51. The concept of respondeat superior does not apply to actions brought under § 1983.  A defendant in a § 1983 action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Thus, in Iqbal, 556 U.S. at 677, the Supreme Court rejected plaintiff's claim that a supervisor's mere knowledge of a subordinate's unlawful purpose or action amounts to the supervisor violating the Constitution, and held that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." See Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1980).

Similarly, a § 1983 lawsuit cannot proceed against a state actor unless plaintiff alleges that the defendant personally violated plaintiff's federal rights, or actively and intentionally assisted in the violation, or directed the violation, or knew that someone else was violating, or was about to violate, the plaintiff's rights and acquiesced in that violation. Evancho v. Fisher, 423 F.3d 347, 353-54 (3d Cir. 2005) (affirming  complaint's dismissal where it failed to allege facts presenting these elements or that the named defendant had contemporaneous, personal knowledge of or specifically directed the events giving rise to the lawsuit);  Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990) (affirming dismissal against prison superintendent where nothing suggested he was involved in the acts complained of or that they were done with his knowledge); Rode, 845 F.2d at 1207-08 (acquiescence requires both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor); Hampton v.

10

Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976).

Noonan is sued in his individual capacity only because he is PSP Commissioner who is managerially responsible for the operations and management of the agency. Amended Complaint, ¶¶ 3, 50-51, 67, 74, 77-78. Plaintiff does not allege that at the time Noonan had any knowledge of Taha or of any events underlying the litigation. The alleged failure to conform to CHRIA occurred in 2000, although Noonan did not become PSP Commissioner until 2011. Exhibit A, hereto. Moreover, it is not alleged that Noonan knew or could have known that (1) the court of common pleas ordered the expungement of plaintiff's criminal records; (2) PSP did or did not advise other criminal justice agencies if the expungement order; (3) BCCF did or did not expunge or disseminate the record; or (4) Mugshots.com posted plaintiff's picture and arrest record on its website. Amended Complaint, Ex. G.

The Amended Complaint fails to allege that Noonan himself, as is required for individual liability under § 1983, did or did not notify the BCCF of the expungement, as required by 18 Pa.C.S. §§ 9122(d). Instead, the Amended Complaint cursorily alleges without any factual support that "[u]pon information and belief, the Pennsylvania State Police central repository never notified the Bucks County Prison Facility of the expungement" or, alternatively, "did notify the Bucks County Prison Facility of the expungement," but BCCF never expunged the record. Id. ¶¶ 50-51. Allegedly, Mugshots.com received the information from BCCF's website. Id., ¶¶ 52-54. It is not disputed that PSP expunged plaintiff's criminal record in 2000, years before Noonan even worked for the PSP. Id., Exhibit G.

However construed, the Amended Complaint and Cross-Claim fail to allege that Noonan, in contrast to PSP central records repository, had any involvement in or knowledge of the events underlying this lawsuit. It is not alleged that Noonan personally knew anything about Taha, the

11

expungement order and its implementation, or the posting of plaintiff's criminal record on BCCF or Mugshot's websites. The Amended Complaint literally fails to allege any facts supporting a claim that Noonan personally violated plaintiff's federal rights, actively and intentionally assisted in the violation, directed the violation, or knew that someone else was violating, or was about to violate, plaintiff's rights, and acquiesced in that violation. Absent factual allegations connecting Noonan to any constitutional violation or showing that plaintiff has a "plausible claim for relief" against him, the Amended Complaint cannot give rise to a § 1983 violation against Noonan in his individual capacity and must be dismissed.

**E.      Plaintiff Cannot State a Monell claim Against Commissioner Noonan**

Count V of the Amended Complaint asserts a § 1983 claim based on Monell against Bensalem Township and/or Bucks County and/or Commissioner Noonan. Monell provides that only "[l]ocal governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690 (emphasis added). In Will v. Mich. Dep't of State Police, 491 U.S. at 71, the Supreme Court, in holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," specifically held that "States are protected by the Eleventh Amendment while municipalities are not, and we consequently limited our holding in Monell 'to local government units which are not considered part of the State for Eleventh Amendment purposes.'" Id. at 70 (quoting Monell, 436 U.S. at 691 n. 54). See Moriarty v. Rendell, C.A. No. 08-1532, 2009 WL 1458021, at * 3 (M.D.Pa. 2009) (Monell applies only to municipalities).

At bar, without asserting any facts to support his claim, plaintiff urges that the court impose liability on Noonan, "as chief policy maker for the" PSP, under a Monell theory. Amended Complaint, ¶¶ 101-102. Since Monell claims do not extend to State officials, plaintiff's Monell claim against Noonan in both his official and individual capacities must be dismissed.

F. **Pennhurst State School Bars the State Law Claims For Injunctive Relief under CHRIA**

Despite the records attached to the Amended Complaint, Exhibit G, documenting that PSP expunged plaintiff's criminal record in 2000, Taha asserts the legal conclusion without any factual allegations supporting the legal conclusion that PSP's violation of CHRIA is the basis for imposing liability in Counts I and II.[4] Count I alleges that plaintiff's criminal record was not entirely expunged by BCCF; he seeks damages for that failure to expunge and a court order directing that they take action to expunge the record. Count II alleges that plaintiff's arrest record was wrongfully disseminated, ostensibly by BCCF to Mugshots.com; he seeks damages for that dissemination and a court order enjoining further disclosure. No facts in the Amended Complaint or Cross-Claim support a claim that PSP or Noonan had any knowledge of or involvement in these alleged violations of state law. To the extent, however, that plaintiff requests that the court direct Noonan to conform his conduct to state law by compelling him to ensure that PSP has expunged plaintiff's criminal record or notify other criminal agencies of the expungement, the operation of Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. at 98-100, bars this court from enforcing or relying on state law as against Commissioner Noonan.

---

[4] Noonan is not named in Count III, which also relates to CHRIA.

Pennhurst was a class action brought by mentally retarded citizens challenging the conditions of confinement in a state institution for the mentally retarded. The Supreme Court held that the Eleventh Amendment bars federal courts from ordering state agencies or officials to conform their conduct to state law even though only prospective injunctive relief was sought since the state was the real, substantial party in interest. Id., 465 U.S. at 104-05. The Court wrote that "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." Id. 465 U.S at 114. See Spidle v. Pennsylvania Office of Budget, 660 F. Supp. 941, 943 (M.D. Pa. 1987).

The federal court must examine each claim in a case to see if the Eleventh Amendment precludes subject matter jurisdiction over that claim. Id. at 121. Even if subject matter jurisdiction has been established on the basis of a federal question for plaintiff's claim against Commonwealth defendants, the court may not enter an order against Commonwealth defendants on the basis of state law. Id. The Eleventh Amendment "deprives a federal court of power to decide certain claims against States that otherwise would be within the scope of Art. III's grant of jurisdiction." Id. 465 U.S at 119-120 (constitutional bar to jurisdiction applies to pendent claims as well). See Alabama v. Pugh, 438 U.S. 781 (1978) (per curiam).

Here, the legal claims and request for relief in Counts I and II are bottomed on Noonan's alleged violation of CHRIA, a state statute. The request for injunctive relief is made pursuant to state law and names Noonan who at all times was acting within the scope of his employment as PSP Commissioner. Amended Complaint, ¶¶ 3, 67, 74, 77-78. To the extent plaintiff wants to ensure that PSP has expunged plaintiff's criminal record or notify other criminal agencies of the

14

expungement, plaintiff bases the claim on an alleged violation of state law, <u>Pennhurst</u> bars the claims.

**G.     State Sovereign Immunity Bars the State Law Claims**

Plaintiff's claims against Noonan for damages and injunctive relief under CHRIA are also barred by state sovereign immunity. The constitutionally-based doctrine of sovereign immunity bars damages claims for violations of state law, including intentional misconduct, against a "Commonwealth party," which includes Commonwealth agencies and their officials and employees acting within the scope of their duties,[5] see 42 Pa. C.S. § 8501, except where the legislature provides otherwise.[6] 1 Pa. C.S. § 2310; 42 Pa. C.S. §§ 8521-8522 (listing the nine narrowly enumerated exceptions for which "the defense of sovereign immunity shall not be raised to claims for damages"). See <u>Lombardo v. Pennsylvania, Dept. of Public Welfare</u>, 540 F.3d 190, 195 (3d Cir. 2008); <u>Chittister v. Dep't of Cmty. & Econ. Dev.</u>, 226 F.3d 223, 227 (3d Cir.2000) (acknowledging that, with the exception of the tort claims for damages in state court

---

[5] Title 1 Pa. C.S. § 2310 provides in relevant part: "Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." Section 2310 immunizes not only Commonwealth officials but also Commonwealth agencies. See <u>Johnson v. Commonwealth of Pa. DOC</u>, C.A. No. 92-5149, 1992 WL 392601, at *1 (E.D. Pa. Dec. 18, 1992). Title 42 Pa. C.S. §§ 8521(a) provides that "Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa. C.S. § 2310 (relating to sovereign immunity, specific waiver) or otherwise."

[6] Sovereign immunity applies to all claims except for nine narrowly enumerated exceptions, none of which apply in this case. The categories are (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. C.S. § 8522(b). Tort claims and civil rights actions are not within these narrow exceptions. See <u>Robinson v. Ridge</u>, 996 F. Supp. 447, 449 (E.D.Pa. 1997), <u>aff'd</u>, 175 F. 3d 1011 (3d Cir. 1999).

listed in § 8522, "the Commonwealth's immunity is otherwise intact"); Heckensweiler v. McLaughlin, 517 F.Supp.2d 707, 721 (E.D. Pa. 2007) (state police officers who participated in standoff that ended in suicide of individual sought to be taken into custody under commitment order were entitled to sovereign immunity from claims for negligence, negligent and intentional infliction of emotional distress, wrongful death, and loss of consortium); Story v. Mechling, 412 F.Supp.2d 509, 519 (W.D.Pa.2006) (Pennsylvania corrections officer is entitled to sovereign immunity for intentional torts), affirmed, 214 Fed. Appx 161 (3d Cir. 2007); Frazier v. SEPTA, 868 F. Supp. 757, 761-62 (E.D. Pa. 1994) (state agency enjoys sovereign immunity from claims for damages for intentional misconduct and for negligent infliction of emotional distress); Heicklen v. Hoffman, 761 A. 2d 207, 208 (Pa. Cmmw. Ct. 2000) (State and its employees enjoy sovereign immunity for claims based upon Pennsylvania Constitution); Faust v. Commonwealth Dep't of Revenue, 592 A. 2d 835, 839 (Pa. Cmmw. Ct..1991) (State and its employees enjoy sovereign immunity for claims based upon the Pennsylvania Constitution and for intentional torts), appeal denied, 607 A. 2d 257 (Pa. 1992); Yakowicz v. McDermott, 548 A.2d 1330, 1333 (Pa. Cmmw. Ct. 1988) (sovereign immunity applies even where alleged misconduct--defamation and invasion of privacy--was intentional in nature), appeal denied, 565 A.2d 1168 (Pa. 1989); Cheronis v. SEPTA, 539 A.2d 15, 18 (Pa. Cmmw. Ct. 1988) (Members of Board of Probation and Parole enjoyed immunity from liability in action brought against them in their individual capacities alleging negligence in paroling individual, who allegedly attacked person in railroad station, and in subsequently failing to supervise his parole).

      The protection of sovereign immunity also applies to requests for affirmative action by way of injunctive relief. Bonsavage v. Borough of Warrior Run, 676 A. 2d 1330, 1331-32 (Pa. Cmmw. Ct. 1996) (sovereign immunity barred landowner's claim for injunctive relief seeking to

require PennDOT to clean and maintain storm and sanitary sewer pipes); Swift v. Dept. of Transp. of Com., 937 A.2d 1162, 1168 (Pa. Cmmw. Ct. 2007) (demand that PennDOT take affirmative action and restore waterway to earlier condition or, in the alternative, divert water from their property, was barred by immunity unless claim fell within one of the exceptions to immunity set forth in 42 Pa.C.S. § 8522); Stackhouse v. Commonwealth., 892 A.2d 54, 61 (Pa. Cmmw. Ct. 2006).

A request for declaratory relief that serves only as a legal predicate for a damages or other immunity-barred claim in the same action is also barred. Swift, 937 A.2d at 1169 (sovereign immunity barred appellants' request for declaration that "Defendants are under a duty to maintain the drainage easement in its January 1979 condition"); Stackhouse, 892 A.2d at 62-63 (State Police employee's declaratory action against State Police and officials was barred by sovereign immunity where declarations sought amounted to no more than the legal underpinnings of employee's damage claims and mandatory injunction requests, which were themselves barred by sovereign immunity). The purpose of absolute sovereign immunity--to insulate state agencies and employees not only from judgments but also from being required to expend the time and funds necessary to defend suits--would be frustrated if the declaratory action were allowed to go forward under those circumstances. Stackhouse, 892 A.2d at 61.

Here, the Amended Complaint and Cross-Claim sue Commissioner Noonan, a Commonwealth party who at all times was acting within the scope of his employment as a Commonwealth official. Complaint, ¶¶ 3, 67, 74, 77-78. See 42 Pa. C.S. § 8501. Thus, 42 Pa. C.S. § 8521 confers sovereign immunity on Noonan for the state law claims. As none of the exceptions provided at section 8522 applies to plaintiff's state law claims, regardless of whether they seek damages or equitable relief, by, for example, requesting that the court enjoin Noonan

to take affirmative action by expunging his criminal record or advising other criminal justice agencies of the expungement, they are barred by sovereign immunity.

## III. CONCLUSION

For the foregoing reasons, Commissioner Noonan requests that plaintiff's Amended Complaint and Bensalem's Cross-Claim be dismissed.

                                                KATHLEEN G. KANE
                                                ATTORNEY GENERAL

                            BY:   /s/ Barry N. Kramer
                                   BARRY N. KRAMER
                                   Chief Deputy Attorney General

Office of Attorney General
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-1581
Fax:     (215) 560-1031

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARYOUSH TAHA, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| PENNSYLVANIA STATE POLICE COMMISSIONER FRANK NOONAN, et al., | : | No. 12-6867 |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

    I, Barry N. Kramer, hereby certify that on June 14, 2013, Entry of Appearance was filed electronically and is available for viewing and downloading from the Court's Electronic Case Filing System. The ECF System's electronic service of the Notice of Electronic Case Filing constitutes service on all parties who have consented to electronic service.

Alan Denenberg, Esquire
Abramson & Denenberg
1315 Walnut Street, 12th Floor
Philadelphia, PA 19107

Kathryn Dux, Esquire
German Gallagher & Murtagh
The Bellevue, Suite 500
200 S. Broad Street
Philadelphia, PA 19102

Frank Chernak, Esquire
Erin Clarke, Esquire
Ballard Spahr, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-2799

                      BY:   /s/ Barry N. Kramer
                                 Barry N. Kramer