IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARYOUSH TAHA | : | CIVIL ACTION |
| *Individually and on Behalf of* | : | |
| *All Others Similarly Situated* | : | |
| | : | |
| v. | : | |
| | : | |
| BUCKS COUNTY, et al. | : | NO. 12-6867 |

## MEMORANDUM

**L. Felipe Restrepo, J.**                                      February 21, 2014

    Daryoush Taha brings this putative class action suit against Bucks County and the Bucks County Correctional Facility (collectively "the County defendants"), along with the companies that operate the websites mugshots.com, mugshotsonline.com and bustedmugshots.com.  Taha alleges that the defendants published his expunged arrest record in violation of Pennsylvania's Criminal History Record Information Act ("CHRIA"), 18 Pa. C.S.A. § 9101 *et seq*.  He further alleges that the corporate defendants have violated 42 Pa. C.S.A. § 8316, which prohibits the unauthorized use of a name or likeness, and have committed the invasion-of-privacy tort of "false light."

    The County defendants have moved to dismiss Taha's claims against them pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.  They argue that governmental immunity bars Taha's claim for damages under the CHRIA, and that his claim for injunctive relief must be dismissed because he has not shown a sufficient risk of future harm.  For the reasons that follow, the motion will be denied.

1

**I.     BACKGROUND**

The alleged facts relevant to this motion are straightforward.  Taha was arrested in 1998 by the Bensalem police, booked into custody, and transferred to the Bucks County Correctional Facility ("BCCF").  Second Amended Complaint ("SAC"), ECF Doc. 33, ¶¶ 20-21.  In the course of that process the police and BCCF created a file that included information about Taha and his arrest, along with his photograph.  *See id.* ¶¶ 20-22.  While Taha "strongly believed himself to be innocent of all charges," he accepted and completed an Accelerated Rehabilitative Disposition ("ARD") "in order to secure the automatic expungement of all charges and avoid the damage to his reputation and career prospects that would arise from having a criminal record."  *Id.* ¶¶ 23-24.  In 2000, after Taha completed the ARD program, the Bucks County Court of Common Pleas entered an expungement order.  *Id.*

In 2007, according to the allegations, the County defendants created a public website that included the booking photographs and arrest records of people who had been incarcerated in Bucks County – including those "who had been arrested years before and had their charges either expunged or dismissed."  *Id.*  ¶¶ 30-31.  This allowed the corporate defendants to obtain Taha's record and picture and publish them on their own websites for "public consumption," without Taha's consent.  *Id.* ¶ 33.  At the time he filed his original complaint in 2012, Taha's information and photograph remained available on the BCCF site.  *See id.* ¶ 32.  Taha had been convicted of no crime in the thirteen years since his arrest, *see id.* ¶ 34; the internet publication of his "mugshot" and 1998 record caused him reputational, emotional and financial harm.  *See id.* ¶¶ 39-41.

Counts I and II of Taha's Second Amended Complaint allege that the County defendants disseminated Taha's criminal history record information in violation of § 9121 of the CHRIA, 18 Pa. C.S.A. § 9101 *et seq*. The County defendants move to dismiss both counts.

## II.   JURISDICTION AND STANDARD OF REVIEW

This Court has federal subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. To decide a motion to dismiss, a court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Because this is a diversity action, Pennsylvania's substantive law applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938). Where the law is unclear and there is no controlling decision by the Pennsylvania Supreme Court, this Court must "predict" how it would rule, giving "due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000); *see also West v. AT&T Co.*, 311 U.S. 223, 237 (1940).

## III.   DISCUSSION

### A.  Governmental Immunity from CHRIA Damages Claim

The County defendants move to dismiss Count I on the grounds that they are immune from suits for damages pursuant to Pennsylvania's Political Subdivision Tort Claims Act

("PSTCA"), 42 Pa. C.S.A. §§ 8541-42.[1] Taha contends that the PSTCA does not shield government entities from CHRIA damages claims. Because the Pennsylvania Supreme Court has not directly addressed the applicability of the PSTCA in this context, I must predict how it would rule. *Nationwide Mut. Ins. Co.*, 230 F.3d at 637.

### 1) The CHRIA

The Pennsylvania legislature adopted the CHRIA in 1980 in order to "provide for an orderly collection and dissemination of criminal history information in the Commonwealth." Commw. of Pa. Office of Att'y Gen., CRIMINAL HISTORY RECORD INFORMATION ACT HANDBOOK 1 (7th ed. 2013) [hereinafter CHRIA Handbook]. Most centrally, the CHRIA tasks the Pennsylvania State Police with the "collection, compilation, maintenance and dissemination of criminal history record information" through a "central repository." *Id.* § 9102. "Criminal justice agencies" – governmental units that include courts, police departments, jails and prisons, *see id.* – must collect and relay certain information to the central repository, ensuring that it is accurate. *See id.* §§ 9111-14. To the extent they maintain their own "repositories" or "automated systems," they must comply with provisions relating to accuracy, security and public notice. *See id.* §§ 9102, 9106, 9111-14, 9131, 9142, 9171. Section 9121, the provision at issue here, imposes restrictions on the "dissemination" of criminal history information by criminal justice agencies and police departments.

The CHRIA establishes separate requirements for the official handling of sensitive "protected information," *id.* § 9106, as well as procedures for expungement, *see id.* § 9122-23. It also includes two provisions limiting the use of criminal records by state licensing agencies and

---

[1] Because the County defendants have not raised the availability of punitive damages specifically, I will not address that issue at present. Additionally, I note that Count I of the Second Amended Complaint is not limited to damages; Taha also seeks injunctive relief and attorneys' fees. Governmental immunity pursuant to the PSTCA is therefore not a defense to Count I in its entirety.

by employers (in making hiring decisions). *See id.* §§ 9124-25. Subchapter F establishes an "individual right of access and review" of a person's own record information, *see id.* §§ 9151-53, while Subchapters E and G authorize the state Attorney General to implement and enforce the CHRIA regime. *See id.* §§ 9141-43, 9161.

    Finally, the CHRIA includes sanctions for violations of its terms. Section 9181 provides that any "person, including any agency or organization," who violates the CHRIA may be "denied access to specified criminal history record information," "subject to civil penalties or other remedies as provided for in this chapter," or, in the case of an agency employee, "administratively disciplined." Section 9183 ("Civil Actions") establishes a cause of action for suits seeking injunctive relief or damages. Subsection (a) empowers the Attorney General "or any other individual or agency" to institute an action "against any person, agency or organization" to enjoin a CHRIA violation or compel compliance. Subsection (b) provides as follows:

> (b) Action for damages.
>
> (1) Any person aggrieved by a violation of [the CHRIA], shall have the substantive right to bring an action for damages by reason of such violation in a court of competent jurisdiction.
>
> (2) A person found by the court to have been aggrieved by a violation of this chapter or the rules or regulations promulgated under this chapter, shall be entitled to actual and real damages of not less than $100 for each violation and to reasonable costs of litigation and attorney's fees. Exemplary and punitive damages of not less than $1,000 nor more than $10,000 shall be imposed for any violation of this chapter, or the rules or regulations adopted under this chapter, found to be willful.

    The County defendants do not contest the fact that, taking his allegations to be true, Taha qualifies as a person "aggrieved by a violation" of the CHRIA. The question before the Court is

whether he may pursue "actual and real damages" from the County defendants, or whether the PSTCA renders them immune.

>   *2) The PSTCA*

The Political Subdivisions Tort Claims Act, 42 Pa. C.S.A. §§ 8541-42, enacted in response to the judicial abolition of governmental immunity in *Ayala v. Philadelphia Board of Public Education*, 305 A.2d 877 (Pa. 1973), provides that "no local agency shall be liable for any damages on account of any injury to a person or property," subject to eight enumerated exceptions not relevant here. *Id.* §§ 8541-42.[2] In *Meyer v. Community College of Beaver County,* 2 A.3d 499 (Pa. 2010), the Pennsylvania Supreme Court held that PSTCA immunity does not extend to statutory claims "arising" in contract, but does extend to statutory claims "arising in tort." *See id.* at 502 (finding that PSTCA conferred immunity for "'injury to a person or property' as a reflection of traditional tort jurisprudence"); *id.* at 505 (Orie Melvin, J., concurring) (directing Commonwealth Court to "ascertain whether the claims sound in tort or in contract and dispose of the matter accordingly").

This tort/contract framework, however, is not exhaustive. As both parties and the Pennsylvania Supreme Court noted in *Meyer*, the PSTCA does not apply to statutory schemes that specifically provide for damages against governmental actors. *See* 2 A.3d at 501 (acknowledging "the many statutory schemes providing for monetary redress against governmental entities"); *id.* at 502 ("With regard to the series of statutes referenced by Appellants embodying statutory damages remedies against governmental entities, the College

---

[2] The exception categories are "vehicle liability;" "care, custody or control of personal property;" "real property;" "trees, traffic controls and street lighting;" "utility service facilities;" "streets;" "sidewalks;" and "care, custody or control of animals." *Id.* § 8542(b)(1)-(8). Taha has not argued that any exception applies. *Cf. Bufford v. Pa. Dep't of Transp.*, 670 A.2d 751, 753-55 (Pa. Commw. Ct. 1996) (holding that negligent management of driving record did not fall within personal property exception).

acknowledges that targeted enactments control over the more general provision for governmental immunity.").[3] Such statutes constitute independent waivers of sovereign and governmental immunity. *Cf.* 1 Pa. C.S.A. § 2310 (stating that claims may be brought against the Commonwealth where "specifically authorized by statute"). In the words of the General Assembly's Local Government Commission, "no immunity would exist where the Commonwealth specifically has allowed in another law for the possibility that civil damages may be recoverable, as is the case, for example, under Act 169 of 1986, the Whistleblower Law." Pa. Gen. Assembly, Local Gov't Comm'n, PENNSYLVANIA LEGISLATOR'S MUNICIPAL DESKBOOK 79 (3d ed. 2006); *see also, e.g.*, 62 Pa. C.S.A. § 3935 (penalty provision of government procurement code providing for damages); 18 Pa. C.S.A. § 5725 (cause of action for unlawful interception of communications containing waiver of sovereign immunity).[4]

The question here, then, is whether the CHRIA constitutes a "targeted enactment" authorizing damage suits against government actors.

### 3) Analysis

The text of § 9183 itself, as the County defendants point out, does not contain an express authorization. While subsection (a) explicitly provides for injunctive relief against "any criminal

---

[3] Even excluding statutes that provide for damages against the government, it is not clear that every statutory claim must sound in either tort or contract. *Meyer* seems to assume as much, but does not hold so explicitly. *Cf. In re Bradley Estate*, 835 N.W. 2d 545 (Mich. 2013) (addressing this question for purposes of Michigan law, with vigorous dissents); *Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996) (suggesting that "actions for the assessment or imposition of civil penalties" do not sound in tort).

[4] The County defendants cite one case suggesting that the legislature cannot waive governmental immunity at all beyond the terms of the PTSCA: *Antonis v. Liberati*, 821 A.2d 666, 668 (Pa. Commw. Ct. 2003). To the extent it has this import, the decision cannot be reconciled with the fact that governmental immunity is a creature of statute that the legislature can waive at will, nor with the fact that the Pennsylvania Supreme Court and lower courts routinely honor such waivers. Notably, the Pennsylvania Supreme Court granted the plaintiff's permission to appeal, *see* 842 A.2d 407 (2004), but the appeal was not completed.

justice agency," subsection (b) does not specify the entities against which damages may be sought. Provisions of a complex statutory regime cannot be read in a void, however; in order to determine legislative intent, the analysis must consider the statute as a whole, taking into account its purpose and context. *See* 1 Pa. C.S.A. § 1921; *E.D.B. v. Clair*, 987 A.2d 681, 684 (Pa. 2009). The CHRIA, read as an integrated whole, clearly does authorize damage suits against governmental entities.[5]

To begin with, nearly all of the CHRIA's provisions exclusively regulate governmental units: "criminal justice agencies" and their record information "repositories." *See* 18 Pa. C.S.A. § 9102. The Act contains one provision that restricts private actors – the limitation on the use of criminal records by "employers," § 9125 – and a handful creating individual rights, *see id.* §§ 9151-53 (right-of-access provisions); 9122-23 (expungement), but otherwise this comprehensive regime addresses governmental actors only. It is apparent from the structure and content of the CHRIA that its object was to ensure the "orderly collection and dissemination of criminal history information" by the Pennsylvania criminal justice apparatus. CHRIA Handbook at 1; *see also Schmidt v. Deutsch Larrimore Farnish & Anderson, LLP*, 876 A.2d 1044, 1047 (Pa. Super. Ct. 2005) (rejecting plaintiff's claim that CHRIA's dissemination provisions applied to private law firm).

Given that fact, logic requires the conclusion that the CHRIA's damages provision was intended to apply to governmental units. This would be beyond dispute if the Act did not extend to private persons at all. The Whistleblower Law, 43 Pa. C.S.A. § 1421 *et seq.*, is an example of a statute that regulates governmental actors exclusively. Like the CHRIA, it includes a private right of action, *see id.* § 1424, and a separate "enforcement" provision that empowers courts to

---

[5] So far as I can ascertain, the CHRIA's sparse legislative history does not speak to this point. The analysis must therefore rely on the statute itself.

award "actual damages," *id.* § 1425.  No provision expressly provides that damages may be sought against government entities, but, as the Court explained in *Rankin v. City of Philadelphia*, 963 F. Supp. 463 (E.D. Pa. 1997) (Brody, J.),

> the Whistleblower Law's general scheme . . . demonstrates a legislative waiver of immunity under the Political Subdivision Tort Claims Act.  The Law essentially creates a statutory tort that applies only to governmental employers, and thus is not a cause of action of general application, such as the common law tort action for negligence, that was of most obvious concern to the General Assembly when it enacted the Political Subdivision Tort Claims Act.

*Id.* at 475.  *See also O'Rourke v. Commonwealth*, 778 A.2d 1194, 1202-05 (Pa. 2001) (noting that "recovery under the [Whistleblower] statute is proportionate to the harm suffered"); *Retenauer v. Flaherty*, 642 A.2d 587, 594-95 (Pa. Commw. Ct. 1994) (concluding that "[t]he City is generally the responsible party for satisfaction of damages under the Whistleblower Law").[6]

But for § 9125 (which regulates "employers"), remedies for violation of the CHRIA would apply only to government actors and their agents.  Section 9183 is certainly "not a cause of action of general application" like negligence, or like the Unfair Trade Practices and Consumer Protection Law claim at issue in *Meyer*.  The CHRIA's "general scheme" thus demonstrates a waiver of immunity.  It cannot be that the legislature intended the statute's most effective sanction to be inapplicable to most of the regime.

Furthermore, even when statutes regulate both government and private conduct and lack explicit waivers, Pennsylvania courts have interpreted them to waive immunity when they specifically provide that the regime, as a whole, applies to government units.  As the Pennsylvania Commonwealth Court wrote of the Pennsylvania Human Relations Act ("PHRA"),

---

[6] This reasoning should be equally applicable to Pennsylvania's statute for the "protection of public utility employees," 66 Pa. C.S.A. § 3316, which includes nearly identical provisions.

> [T]he legislature obviously meant to allow an aggrieved public employee to bring an action against his or her employer, the Commonwealth, for it included the Commonwealth under the term "employer" in Section 4 of the Act, 43 Pa. C.S. § 954. The appellee's claim therefore is not one sounding in trespass and thereby affected by Act 152, the recent enactment as to sovereign immunity, but rather it is a statutorily created cause of action against the Commonwealth as an "employer", not the Commonwealth as a sovereign entity.

*Mansfield State Coll. v. Kovich*, 407 A.2d 1387, 1388 (Pa. Commw. Ct. 1979) (internal citations omitted); *see also Verde v. City of Philadelphia*, 862 F. Supp. 1329, 1335 (E.D. Pa. 1994) ("[T]he "plain meaning rule" of the Pennsylvania Statutory Construction Act, combined with the Pennsylvania Legislature's consistent reaffirmation of the definition of "employer" that includes the City, mandates a finding that the City is not immune from suit under the PHRA."). Along similar lines, the Pennsylvania Commonwealth Court has held that sovereign immunity does not bar suit under the Dam Act "because the Dam Act provides a remedy against any person who violates the act, [and] includes within the definition of 'person' 'any department, board, commission or authority of the Commonwealth.'" *Odette's, Inc. v. Commonwealth*, 699 A.2d 775, 779 (Pa. Commw. Ct. 1997).[7]

The CHRIA is far more explicit than the PHRA and the Dam Act: It specifically regulates governmental "criminal justice agencies." *See* 18 Pa. C.S.A. § 9102; *see also id.* § 9111 (emphasizing that "every criminal justice agency within the Commonwealth" must "maintain complete and accurate criminal history record information" and "report such information . . . as required by the provisions of this chapter"). In terms of sanctions, § 9106 specifies that "[a]ny person, *including any agency or organization*, who violates the provisions of this section *shall* be subject to . . . the civil penalties provided in section 9183," and § 9181

---

[7] Although sovereign and governmental immunity are distinct, the Pennsylvania statutes governing them – the Sovereign Immunity Act, 42 Pa. C.S.A. §§ 8521-22 and PSTCA, *id*. §§ 8541-42 – are to be read "consistently." *Jones v. Se. Pa. Transp. Auth.*, 772 A.2d 435, 440 (Pa. 2001).

provides more broadly that "[a]ny person, *including any agency or organization*, who violates the provisions of this chapter or any regulations or rules promulgated under it may . . . [b]e subject to civil penalties or other remedies as provided for in this chapter." *Id.* §§ 9106, 9181 (emphasis added). The plain meaning of these provisions is that criminal justice agencies are subject to the civil penalties of § 9183.

To hold otherwise would contravene the words of the statute. The CHRIA states that a person aggrieved by a violation of its terms "*shall* be entitled to actual and real damages." *Id.* § 9183(b) (emphasis added). Section 9121 of the CHRIA, the substantive provision at issue here, can only be violated by government actors. If an aggrieved person "shall" be entitled to damages for a violation, it is necessarily against a government unit. At least with respect to those CHRIA provisions that apply exclusively to government actors, then, § 9183 contains a specific authorization for damages suit.[8]

The relevant case law supports this conclusion. Although the Pennsylvania Supreme Court has not directly addressed whether the PSTCA bars CHRIA damage suits against the government, it has indirectly held that such damages are available. The plaintiff in *Hunt v. Pennsylvania State Police*, 983 A.2d 627 (Pa. 2009), had sued the state police for violations of CHRIA's expungement provisions. The Commonwealth Court issued a decision in his favor but denied his request for actual and punitive damages. When the state police appealed the decision, Hunt cross-appealed the denial of damages. *Id.* at 631 & n.8.

The Supreme Court wrote:

---

[8] A separate law provides further evidence: The statute that re-established Pennsylvania's state DNA database in 2005, 44 Pa. C.S.A. § 2301 *et seq.*, contains a damages provision identical to the CHRIA's, *see id.* § 2333, which necessarily applies to the governmental units charged with the management of the database.

11

> As is plain from a reading of the statute, by its terms, CHRIA provides for the possibility of actual and real damages, and reasonable costs of litigation and counsel fees, where a person was found to have been aggrieved by a violation of CHRIA. The statute also contains a provision for the award of exemplary and punitive damages when the violation is found to be willful. CHRIA does not define the term "aggrieved," nor does it set forth whether the Commonwealth may be liable for punitive damages under the statute.

*Id.* at 639. It then remanded the case for the Commonwealth Court to determine whether Hunt was "aggrieved" by the actions of the state police, "whether exemplary and punitive damages are available against the State Police as a government agency" in light of "case law suggest[ing] the Commonwealth may be exempt from the imposition of punitive damages" (an issue the Court raised *sua sponte*), and finally, if so, whether punitive damages were warranted. *Id.*

The Supreme Court conspicuously did not ask the Commonwealth Court to determine whether actual damages are available against the State Police. It did not raise the PSTCA as a potential bar. The Court's language and action implies, instead, that if Hunt were "aggrieved," he would be entitled to the "actual and real damages" contemplated by the statute. Indeed, given that this issue was before the Court, and that it did not specify otherwise, this is the only logical interpretation of the decision.

In addition, a number of other Pennsylvania courts have held or assumed that the CHRIA provides for damages against government units. *See Schmidt v. Deutsch Larrimore Farnish & Anderson, LLP*, 876 A.2d 1044, 1047 (Pa. Super. Ct. 2005) ("We agree with appellant that the Act clearly provides for civil actions against criminal and non-criminal agencies as well as individuals; the language excerpted above makes that clear."); *In re Pittsburgh Citizen Police Review Bd.*, 2010 WL 5775100 (Pa. Com. Pl. 2010) (stating that, if a local police department violated the CHRIA, "the city would be subject to . . . damage actions brought by persons

aggrieved"), *aff'd*, 36 A.3d 631 (Pa. Commw. Ct. 2011), *permission to appeal denied by* 44 A.3d 1163 (Pa. 2012). More generally, the Pennsylvania Superior Court has written that

> § 9183 provides for broad remedies in the event of noncompliance . . . . We conclude that the purpose of this provision is not to restrict the manner in which a party may seek to enforce the Act, but to expand the avenues of relief.

*Commonwealth v. M.M.M.*, 779 A.2d 1158, 1163-64 (Pa. Super. Ct. 2001). In this district, at least one court has allowed a damage claim against a municipal entity to proceed past a motion to dismiss. *See Rosiji v. City of Phila.*, No. 11-6469, 2012 WL 1646726 (E.D. Pa. 2012) (denying motion to dismiss) & ECF Doc. 18 (amended complaint seeking "compensatory and punitive damages against the City" under the CHRIA).

On the other side of the ledger, one district court has held the PSTCA to bar CHRIA damage suits against governmental units. *See Devore v. City of Phila.*, No. 04-3030, 2005 WL 352698, at *6 & n.4 (E.D. Pa. 2005). It does not appear, however, that the Court had occasion to consider the issue at length. The more complex decision is *Poliskiewicz v. East Stroudsburg University*, 536 A.2d 472 (Pa. Commw. Ct. 1998), in which the Pennsylvania Commonwealth Court held that sovereign immunity barred suit against a state college for violation of 18 Pa. C.S.A. § 9125, the CHRIA provision limiting the use of criminal records in hiring decisions. On a close reading, the decision is quite narrow: the Court concluded that nothing in the CHRIA demonstrated "that the legislature has specifically waived the defense [of sovereign immunity] *for purposes of the type of action brought here*," *id.* at 475 (emphasis added) – a CHRIA employment discrimination suit. Section 9125, which applies to all "employers," is arguably a "cause of action of general application," *Rankin*, 963 F. Supp. at 475, such that immunity should apply. The Commonwealth Court did not consider or decide whether the Act waived immunity for purposes of other types of CHRIA claims.

13

Taking into account this legal landscape, and the structure and content of the CHRIA, I predict that the Pennsylvania Supreme Court would hold that the statute demonstrates a clear legislative intent to hold government entities liable for damages for violation of § 9121. The CHRIA is a comprehensive statutory regime, the primary goal of which is to regulate governmental actors. It imposes affirmative duties on criminal justice agencies, and specifically provides that "any agency" shall be subject to the civil penalties of § 9183. Pennsylvania courts have found less explicit language, and more ambiguous structure, to waive governmental immunity.

It would not only strain logic and the language of the CHRIA to hold otherwise; it would also undermine the regime. Given the nature of the harm that violations of the CHRIA may cause to one "aggrieved," injunctive relief is, at best, partial. Once false or inappropriate criminal history information has been released, the reputational damage is done. The bell cannot be unrung. The Pennsylvania legislature sought, in enacting the CHRIA, to protect individual privacy and dignity. *See, e.g.*, *In re Pittsburgh Citizen Police Review Bd.*, 16 Pa. D. & C. 5th 435, 445 (noting that the purpose of the CHRIA "is to balance the public's right to know with privacy rights of the citizens of this Commonwealth"). Its manifest intent was to encourage compliance, and provide relief for violations, through a damages remedy. At least in the case of those provisions that can only be violated by government actors, the damages remedy constitutes a waiver of governmental immunity. I will accordingly deny the County defendants' motion to dismiss Count I.

### B. Standing to Seek Injunctive Relief

The County defendants have also moved to dismiss Count II, on the ground that Taha lacks standing to seek injunctive relief because the problematic material is no longer available on

the BCCF website, and Taha "cannot establish a credible threat of future harm." Defs.' Br. (Doc. 38) at p. 13; *see also* SAC ¶ 32 ("At the time of filing the original Complaint, Plaintiff's criminal history record information was still available and publicly accessible on the Bucks County Correctional Facility's website."); Defs.' Br., p. 2 ("[U]pon receiving notice of this lawsuit, . . . the County and the BCCF removed all references to Plaintiff from its database.").[9]

The County defendants are correct that the jurisdiction of Article III courts is limited to "Cases" and "Controversies," and that a claim becomes moot – "and therefore no longer a 'Case' or 'Controversy' for purposes of Article III – when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726-27 (2013) (citation omitted). A defendant, however, "cannot automatically moot a case simply by ending its unlawful conduct once sued." *Id.* (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). Rather, pursuant to the "voluntary cessation doctrine," "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). In *Already*, the Supreme Court found Nike's "unconditional and irrevocable" covenant to refrain from the challenged activity to meet this high threshold. The County and BCCF have not made any comparable showing. I will therefore deny the motion to dismiss Count II.

---

[9] It is not clear that Count II constitutes an independent claim. It appears duplicative of Count I, which alleges the same CHRIA violations and includes a request for "an injunction, ordering both Defendants to take down their websites." Compl. at ¶ 51. Nonetheless, given that § 9183 includes two distinct sub-provisions, one that authorizes suits for injunctive relief and one that authorizes actions for damages, *see* §§ 9183(a) & (b), it arguably creates separate causes of action with distinct requirements for standing. The Court will thus treat Taha's Count II as asserting a claim pursuant to § 9183(a).

## IV. CONCLUSION

For the reasons given, the County defendants' motion to dismiss the claims against them will be denied. An implementing order follows.