IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARYOUSH TAHA<br>*Individually and on Behalf of*<br>*All Others Similarly Situated*<br><br>v.<br><br>BUCKS COUNTY, et al. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br><br>NO. 12-6867 |

**MEMORANDUM**

**Restrepo, J.**                                                                                       March 25, 2014

    Presently before the Court is the motion by Citizens Information Associates, LLC ("CIA") to dismiss Daryoush Taha's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion will be granted in part and denied in part.

### I. BACKGROUND

    I have recently summarized the alleged facts giving rise to this suit, *see Taha v. Bucks Cnty.*, 2014 WL 695205 (E.D. Pa. 2014), and will revisit them only briefly. Plaintiff Daryoush Taha was arrested by the Bensalem police in 1998, processed into custody, transferred to the Bucks County Correctional Facility ("BCCF"), and charged with a criminal offense. Second Amended Complaint ("SAC"), ECF Doc. 33, ¶¶ 20-22. Although Taha believed himself innocent, he accepted an Accelerated Rehabilitative Disposition to ensure that the arrest and charge would be expunged. *Id.* ¶¶ 23-24. In 2000, the Bucks County Court of Common Pleas entered an expungement order. *Id.* ¶ 26. In 2007, however, Bucks County and the BCCF created a public website that included Taha's 1998 mugshot and arrest information. *Id.* ¶¶ 30-31. CIA obtained and re-published the mugshot and arrest information, along with Taha's name and age,

on the websites bustedmugshots.com and mugshotsonline.com. *Id.* ¶¶ 33, 39-41. According to Taha's allegations, CIA's commercial objective is "to draw social media attention" to the mugshots and criminal records it publishes, "earn advertising revenue," and "extract a fee from the publicly disgraced individual in order to 'unpublish' their information." *Id.* ¶ 37.

Taha subsequently brought suit against Bucks County and the BCCF, along with the then-unknown companies that own the websites on which his mugshot and arrest record had appeared. It has now been established that CIA owns and operates two of the websites at issue. Taha's Second Amended Complaint includes three substantive claims against CIA: (1) dissemination of his criminal history record information in violation of § 9121 of Pennsylvania's Criminal History Record Information Act ("CHRIA"), 18 Pa. C.S.A. § 9101 *et seq.*; (2) unauthorized use of a name or likeness in violation of 42 Pa. C.S.A. § 8316; and (3) portraying him in a "false light," a subset of the tort of invasion of privacy. CIA moves to dismiss all three claims.

## II.  JURISDICTION AND STANDARD OF REVIEW

This is a diversity action; jurisdiction lies pursuant to 28 U.S.C. § 1332(d), and Pennsylvania's substantive law applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938). Where the law is unclear and there is no controlling decision by the Pennsylvania Supreme Court, I must "predict" how it would rule, giving "due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000); *see also West v. AT&T Co.*, 311 U.S. 223, 237 (1940).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. To decide a motion to dismiss, a court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). In addition, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.*

### III. DISCUSSION

#### A. CHRIA, 18 Pa. C.S.A. §§ 9121, 9183

Counts I and II of Taha's Second Amended Complaint seek damages and injunctive relief for violation of § 9121 of the CHRIA, which governs "dissemination of records by criminal justice agencies to other criminal justice agencies, noncriminal justice agencies and individuals." *Schmidt v. Deutsch Larrimore Farnish & Anderson, LLP*, 876 A.2d 1044, 1047 (Pa. Super. Ct. 2005). The provision does not address purely private conduct. It establishes a set of rules for criminal justice agencies – among which "only state or local police departments" may disseminate record information to the public at large, Pa. Office of Att'y Gen., CRIMINAL HISTORY RECORD INFORMATION ACT HANDBOOK 1, 14 (7th ed. 2013); *see also* 18 Pa. C.S.A. § 9121(b) – but says nothing about private actors. It would require an inductive leap to hold that these rules, by implication, prohibit any sharing of criminal history record information by private persons. *Cf.* 18 Pa. C.S.A. § 9102 (defining "dissemination" as "[t]he oral or written transmission or disclosure of criminal history record information . . .").

Taha has not, in fact, argued that § 9121 prohibits dissemination by purely private actors. Nor has he claimed that CIA's conduct rendered it a de facto criminal justice agency. Rather, he

3

suggests that, because the County defendants disseminated his record information in violation of § 9121, any subsequent re-publication of it constitutes an additional violation, as the re-publication of defamatory material may constitute an independent act of defamation.

The analogy is inapt. Defamation is a tort that anyone can commit; violation of § 9121 is not. Because § 9121 regulates dissemination by criminal justice agencies only, Taha's claims against CIA for violation of § 9121 will be dismissed.

### B. Unauthorized Use of a Name or Likeness, 42 Pa. C.S.A. § 8316

Pursuant to 42 Pa. C.S.A. § 8316,

> any natural person whose name or likeness has commercial value and is used for any commercial or advertising purpose without the written consent of such natural person . . . may bring an action to enjoin such unauthorized use and to recover damages for any loss or injury sustained by such use.

The statute defines "commercial value" as "[v]aluable interest in a natural person's name or likeness that is developed through the investment of time, effort and money." *Id.* § 8316(e). Typically, plaintiffs who invoke § 8316 have invested resources in the development of a personal brand, and are suing to redress the unauthorized exploitation of that brand. In *Lewis v. Marriott International, Inc.*, 527 F. Supp. 2d 422 (E.D. Pa. 2007), for instance, the Court found that a former hotel chef had stated a § 8316 claim against the hotel operator, which had continued to use his name to advertise wedding packages, where the chef "detail[ed] with particularity the investment of time from the early 1980s onward that he made in creating a reputation in the industry." *Id.* at 428. And in *Eagle v. Morgan*, No. 11-4303, 2013 WL 943350 (E.D. Pa. 2013), the Court issued a verdict for a plaintiff who had presented "ample testimony that the name 'Dr. Linda Eagle' has commercial value due to her investment of time and effort in developing her reputation in the banking education industry." *Id.* at *7.

4

As CIA notes, Taha has alleged no facts demonstrating that he has invested time, effort and money to create "valuable interest" in his name or likeness. Presuming that he can allege such facts, his claim presents the additional wrinkle that it is exactly the inverse of the prototypical § 8316 claim. While the typical plaintiff complains that a defendant has profited by appropriating the value of her brand, Taha complains that CIA has profited by threatening the value of his brand – that it has ransomed his good name. Whether § 8316 encompasses this kind of activity is a question for a later opinion, as are the questions of whether CIA's websites constitute "news reports," *see id.* § 8316(e)(2), and whether application of § 8316 here would violate the First Amendment. Taha's claim will be dismissed without prejudice; should he wish to re-plead it with facts sufficient to show that his name and likeness have "commercial value" as defined by § 8316(e), he may do so.

### C. False Light

To prevail on a claim of "false light," a plaintiff "must show that a highly offensive false statement was publicized by [defendants] with knowledge or in reckless disregard of the falsity." *Santillo v. Reedel*, 634 A.2d 264, 266 (Pa. Super. Ct. 1993). The false statement need not be explicit. "Literal accuracy of separate statements will not render a communication 'true' where the implication of the communication as a whole was false." *Id.* at 267 (quoting *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1189 (Pa. Super. Ct. 1988)). A plaintiff may thus prove a false-light claim by showing that a defendant "created a false impression by knowingly or recklessly publicizing selective pieces of true information." *Id.* "[D]espite the accuracy of the facts disseminated, discrete presentation of information in a fashion which renders the publication susceptible to inferences casting one in a false light entitles the grievant to recompense." *Larsen*, 543 A.2d at 1189.

Taha does not dispute that the discrete elements of information published by CIA were true. He claims, rather, that CIA selectively published his mugshot and arrest information in order to falsely portray him as a "criminal," SAC at ¶ 64, and created "a false impression regarding [his] criminal history and character." *Id.* at ¶ 66. He alleges that CIA's business model depends on casting people in a sordid light, so that they will pay to have their mugshots and records "unpublished." CIA counters that its websites include the disclaimer that "[a]n arrest does not mean that the individual has been convicted of the alleged violation. Individuals on this website are innocent until proven guilty by a court of law." Doc. 54-3.[1] Given the disclaimer and the accuracy of the information published, CIA contends that its websites could not possibly give rise to any false impression. Furthermore, CIA argues, even if the websites could be construed as conveying a false impression, CIA could not be found to have acted in reckless disregard of any falsity.

I cannot endorse CIA's position as a matter of law. The questions here are questions of fact, and Taha's claim, at this stage, is not implausible. The bustedmugshots.com webpage on which Taha's profile appears features the legend "BUSTED!" in large bold letters over his mugshot, as well as a faint image of the company's icon: "B!" in a square speech bubble. Doc. 54-3. Taha's "Information" and "Booking Charges" are prominently placed in the center of the page, as are two clickable options to "Get Detailed Information About This Arrest" and "Monitor This Person For Future Arrests." *Id.* The disclaimer appears in very small font further down the page.

It is plausible that this design creates the impression that Taha is a "criminal" – at the very least, that he is guilty, that he has done something wrong, that his conduct warrants

---

[1] CIA has appended an image of the bustedmugshots.com webpage featuring Taha to its motion to dismiss. Because there is no dispute as to the authenticity of the image and it forms the basis of Taha's claim, I may consider it in deciding the motion. *See Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

6

monitoring in future. And it is plausible that CIA acted in reckless disregard of the possibility that Taha was entirely innocent, that he was not "BUSTED!" but instead unjustly detained. If CIA's business model is extortion by shame, as Taha alleges, the claim is stronger still.

Taha's allegations, accepted as true, are sufficient to state a false-light claim "that is plausible on its face." *Twombly*, 550 U.S. at 570. I will deny CIA's motion with respect to this claim.

### IV. CONCLUSION

For the reasons given, CIA's motion to dismiss will be granted in part and denied in part. An implementing order follows.

ENTERED

MAR 2 6 2014

CLERK OF COURT


xc: Legal