- FOR PUBLICATION -

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DARYOUSH TAHA,**<br>            **Plaintiff,**<br><br>            v.<br><br>**BUCKS COUNTY PENNSYLVANIA,**<br>**BUCKS COUNTY CORRECTIONAL**<br>**FACILITY, and UNPUBLISH LLC,**<br>            **Defendants.**<br><br>**UNPUBLISH LLC**<br>            **Cross Defendant**<br>**BENSALEM TOWNSHIP**<br>            **Cross Claimant**<br><br>            v.<br><br>**BUCKS COUNTY CORRECTIONAL**<br>**FACILITY RECORDS/ RECORDS**<br>**CUSTODIAN EMPLOYEES JANE**<br>**AND/OR JOHN DOE #1-6, BUCKS**<br>**COUNTY PENNSYLVANIA, TERRANCE**<br>**P. MOORE, FRANK NOONAN and**<br>**WILLIAM F. PLANTIER**<br>            **Cross Defendants** | **CIVIL ACTION**<br><br><br><br>**NO.  12-6867** |

## MEMORANDUM OPINION

I.     BACKGROUND

Plaintiff Daryoush Taha brings this putative class action suit against, *inter alia*, Bucks County and the Bucks County Correctional Facility (collectively, "the County Defendants"), alleging that the County Defendants published his expunged arrest record on a publicly available electronic search tool in violation of  Pennsylvania's Criminal History Record Information Act ("CHRIA").  Before the Court are the parties' respective motions for summary judgment.  The County Defendants assert that they did not disseminate criminal history record information as defined by CHRIA, that Plaintiff is not entitled to damages, and that Plaintiff's requests for

injunctive and declaratory relief are moot. Plaintiff opposes and moves for partial summary judgment only on the issue of liability. In addition to the moving papers, the Court held oral argument and solicited supplemental briefings from the parties prior to issuing this decision.

## II.    FACTS

On September 29, 1998, Plaintiff Daryoush Taha ("Taha") was arrested by members of the Bensalem Police Department and transported to the Bucks County Correctional Facility. Defendant's Statement of Undisputed Material Facts ¶¶ 1-2 ("Def. Facts"); Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ¶¶ 1-2 (Pl. Resp."). Personnel at the Bucks County Correctional Facility took Taha's photograph and he was subsequently charged with harassment, disorderly conduct, and resisting arrest. Def. Facts ¶¶ 3-5; Pl. Resp. ¶¶ 3-5. Taha was released one day later. *Id*. On January 5, 1999, Taha entered the Accelerated Rehabilitative Disposition ("ARD") program. On January 31, 2000, Judge R. Barry McAndrews of the Court of Common Pleas of Bucks County issued an order directing the Clerk of Courts of Bucks County, the Bucks County District Attorney, the district court, and the arresting agency to expunge Taha's "arrest and other criminal records," and directed Bensalem Township to retrieve all arrest records from federal and state agencies that had been issued the information. Def. Facts ¶¶ 10-11; Pl. Resp. ¶¶ 10-11.

In January of 2011, the County Defendants created an electronic search tool that would retrieve data contained in the Offender Management System ("OMS") and make it available to the public ("the Inmate Lookup Tool"). Def. Facts ¶¶ 13-15; Pl. Resp. ¶¶ 13-15; Plaintiff's Statement of Undisputed Facts ("Pl. Facts") ¶¶ 4-6; Defendants' Response to Plaintiff's Statement of Undisputed Facts ("Def. Resp.") ¶¶ 4-6. The following data from Taha's 1998 arrest was available on the Inmate Lookup Tool: a color photograph of Taha from the shoulders

up, wearing a blue shirt and pictured against a gray background; sex; date of birth; height; weight; race; hair color; eye color; citizenship; incarceration location; dated committed to incarceration; release date; case number for the crime charged; and "DC, HARASS" listed under "Charge Information." Pl. Facts ¶ 11; Def. Resp. ¶ 11; Def. Resp. Exhibit A, p. 3. Additional fields – unfilled in Taha's case – were available for: complexion; hair length; marital status; FBI number; state ID; current housing section; current housing cell; current housing block; current housing bed; alias information; detainer information; bond information; and, under "Charge Information," the grade, date of offense, and degree. *Id.*

In September or October of 2011, Taha discovered that his 1998 incarceration information was publicly available through the Inmate Lookup Tool. Def. Facts ¶¶ 24-27; Pl. Resp. ¶¶ 24-27. Taha was furious about being included on the website and his wife was similarly outraged and frustrated. Def. Facts ¶¶ 28-29; Pl. Resp. ¶¶ 28-29. Taha testified that he has a "very proud family," and that his mother stated that Taha's arrest and incarceration information was "shameful" and "tarnish[ed] the family name." Def. Facts ¶ 31; Pl. Resp. ¶ 31. Taha further testified that, as a result of the information being available online, he had difficulty sleeping and suffered "sadness, anger, misery," and humiliation in front of friends and family. Def. Facts ¶¶ 46-47; Pl. Resp. ¶¶ 46-47.

There is no evidence that Taha was ever denied employment, terminated from a position, or subjected to an adverse employment action because of the information on the Inmate Lookup Tool, and Taha has not alleged that he suffered any pecuniary or economic loss as a result of the Inmate Lookup Tool. Def. Facts ¶¶ 37-38, 44-45; Pl. Resp. ¶¶ 37-38, 44-45.

**III. ANALYSIS**

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 345 (2010) (citations and internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). A fact is material if it might affect the outcome of the suit under the governing law. *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). "The reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). However, to prevail on a motion for summary judgment, "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Jakimas v. Hoffmann-LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (citing *Anderson*, 477 U.S. at 252).

1. **Criminal History Record Information**

Pennsylvania's Criminal History Record Information Act prohibits the dissemination of "criminal history record information" to an individual or non-criminal justice agency without

first extracting "all notations of arrests, indictments or other information relating to the initiation of criminal proceedings where: (i) three years have elapsed from the date of arrest; (ii) no conviction has occurred; and (iii) no proceedings are pending seeking a conviction." 18 Pa.C.S.A. § 9121(b)(2). The parties disagree as to whether Taha's information available on the Inmate Lookup Tool falls under the purview of CHRIA as criminal history record information, which the statute defines as "[i]nformation collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal charges *and* any dispositions arising therefrom." 18 Pa.C.S.A. § 9102 (emphasis added). The County Defendants argue that the "and" signifies that all of the listed items are necessary to qualify the material as criminal history record information. Taha argues that the "and" should be read in the disjunctive; that is, criminal history record information can consist of any of the items listed in the definition.

The statute's language is plain; the presence of any of the enumerated data identifies the material as criminal history record information. *See e.g. Doe v. Zappala*, 987 A.2d 190 (Pa. Commw. Ct. 2009) ("criminal history record information only applies to: (1) identifiable descriptions, (2) dates and notations of arrests, (3) the criminal charges, and (4) dispositions . . . investigative information that does not fall within *one of* the above four categories is not expungeable under the CHRIA") (emphasis added). The County Defendants mistakenly rely on *Dep't of the Auditor General v. Pa. State Police*, 844 A.2d 78, 80-81 (Pa. Commw. Ct. 2004) in support of their claim that all four elements are necessary to classify material as criminal history record information; in that case, the court simply lifted the definition verbatim from CHRIA without further analysis.

5

The disjunctive reading of "and" is supported both by Pennsylvania Supreme Court precedent and the Pennsylvania Attorney General.  In interpreting Pennsylvania law, this Court is bound by the decisions of the Pennsylvania Supreme Court.  *See Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 309 (3d Cir. 2006).  Where necessary to avoid absurd results, the Pennsylvania Supreme Court has read  "and" to mean "or" in statutes with language similar to CHRIA.  *See e.g.*, *Penn. Labor Relations Bd. v. Martha Co.*, 359 Pa. 347 (1948) ("We are convinced that 'and' must be interpreted as to include 'or,' for it is only in this way that the Act, as applied to various factual situations, can retain the flexibility necessary to achieve the aim for which it was intended"); *Thornburgh v. Lewis*, 470 A.2d 952, 958 (Pa. 1983) ("The presence of the word 'and' between the references [in the statute] does not, as a matter of law, mandate any such implausible interpretation").  It is notable that Pennsylvania's lower courts have engaged in similar interpretation of "and" and "or."  *See Appeal of Martin*, 381 A.2d 1321, 1322 (Pa. Commw. Ct. 1978) ("courts are often compelled to construe 'and' as meaning 'or' and again 'or' as meaning 'and'"); *see also Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000); *see also West v. AT&T Co.*, 311 U.S. 223, 237 (1940) (District courts may give "due regard, but not conclusive effect, to the decisional law of lower state courts").

In addition to this precedent, the Pennsylvania Attorney General has published an extensive CHRIA guide.  *See* Commw. of Pa. Office of Att'y Gen., CRIMINAL HISTORY RECORD INFORMATION ACT HANDBOOK (7th ed. 2013) (hereinafter "CHRIA Handbook").  Although not binding Pennsylvania's Supreme Court – and thus, not binding on this Court – the Attorney General's interpretation is nevertheless "entitled to great weight." *McDowell v. Good Chevrolet-Cadillac, Inc.*, 397 Pa. 237, 245 (1959) (citing *Federal Deposit Ins. Corp. v. Bd. of Finance and Revenue*, 368 Pa. 463, 471 (1951)).  Tellingly, the CHRIA

Handbook notes that criminal history record information "*can be* contained on 'rap sheet,' photograph 'mug shot,' fingerprint cards, and reports," and notes that "[t]his is not a complete list but some of the more common places to find criminal history record information." *Id.* at 5 (emphasis added). Thus, despite the County Defendants' arguments to the contrary, Pennsylvania's chief law enforcement officer has concluded that criminal history record information is not the equivalent of a "rap sheet." Def. Mtn. at 8.

Moreover, the County Defendants' reading is far too narrow in the context of the statute as a whole and would inevitably lead to absurd or unreasonable results. In enacting CHRIA, the Pennsylvania legislature sought "to protect individual privacy and dignity." *See Taha v. Bucks County*, No. 12-6867 2014 WL 695205 at *8 (E.D.Pa. Feb. 21, 2014) ("*Taha I*") (citing *In re Pittsburgh Citizen Police Review Bd.*, 16 Pa. D. & C. 5th 435, 445 (Pa. Com. Pl. 2010)). Pennsylvania's Statutory Construction Act directs that a court should presume that the legislature did not intend a result that is "absurd, impossible of execution or unreasonable." 1 Pa. C.S. §§ 1922(1). Yet, according to the County Defendants' interpretation, a criminal justice agency could disseminate the identifiable descriptions, dates and notations of arrests, indictments, informations, and formal charges to the public all without violating CHRIA simply by excluding the final disposition of the case. In light of the purpose of CHRIA, such an outcome would be untenable.

Here, Taha's 1998 arrest and incarceration information released under the Inmate Lookup Tool included: a color photograph of Taha from the shoulders up; sex; date of birth; height; weight; race; hair color; eye color; citizenship; incarceration location; dated committed to incarceration; release date; case number for the crime charged; and "DC, HARASS" under the heading "Charge Information." Pl. Facts ¶ 11; Def. Resp. ¶ 11; Def. Resp. Exhibit A, p. 3. This

7

data was undoubtedly information collected by a criminal justice agency, arising from the initiation of a criminal proceeding, and consisting of "identifiable descriptions" and "formal charges." 18 Pa.C.S.A. § 9102. Given the unambiguous definition in CHRIA, Pennsylvania's rules of statutory construction, relevant decisions by Pennsylvania courts, and the Attorney General's CHRIA Handbook, this Court finds that the aforementioned information constituted criminal record history information. Therefore, Taha's motion for partial summary judgment is granted.

### 2. Damages

#### a. *Aggrieved*

In order to recover damages for a violation of CHRIA, an individual must first be "aggrieved." 18 Pa. C.S.A. § 9183(b). A party is aggrieved if he can demonstrate that he has standing; that is, "if he can demonstrate that he has a substantial, direct, and immediate interest in the outcome of the litigation." *Pennsylvania Gaming Control Bd. v. City Council of Philadelphia*, 593 Pa. 241, 259 (2007). The County Defendants argue that Taha has not been aggrieved because the disclosed material did not constitute criminal history record information. Because the Court has determined that the County Defendants did, in fact, release criminal history record information, this argument is rejected.

#### b. *"Actual and Real" Damages*

The County Defendants further contend that damages may only be awarded for proven economic loss, any award of damages would violate Defendants' Due Process rights, and punitive damages in this case would be against public policy. Def. Mtn. at 11-12, 19-20. Taha asserts that he is entitled to recover damages without regard to economic loss. Pl. Opp'n at 16-

17. The parties agree that Taha has not suffered any economic loss. Def. Facts ¶¶ 35-38; Pl. Resp. ¶¶ 35-38.

CHRIA provides that individuals aggrieved by a violation of the statute "shall be entitled to actual and real damages of not less than $100 for each violation and to reasonable costs of litigation and attorney's fees." 18 Pa. C.S.A. § 9183(b). The term "actual and real damages" is undefined in CHRIA. Black's Law Dictionary defines "actual damages" as "real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed on the one hand to 'nominal' damages, and on the other to 'exemplary' or 'punitive' damages." *Black's Law Dictionary* (10th ed. 2014), *available at* Westlaw BLACKS. Unrelated Pennsylvania statutes also distinguish between statutory damages and "actual damages." *See e.g.*, 73 P.S. § 201-1 *et seq.* (Pennsylvania Unfair Trade Practices and Consumer Protection Law) (injured parties "may bring a private action to recover actual damages *or* one hundred dollars") (emphasis added); 42 Pa. C.S.A. § 8315 (identity theft) (a court may award "[a]ctual damages arising from the incident *or* $500, whichever is greater") (emphasis added).

Statutes must be construed "so as to give effect to every word contained therein," and a court may presume that the legislature "intends to favor the public interest as against any private interest." 1 Pa. C.S.A. §§ 1921(a), 1922. Thus, a plain reading of the statute indicates that an aggrieved individual under CHRIA must suffer actual injury to recover "actual and real damages." Because the parties agree that Taha has not suffered any economic injury, he is not entitled to such damages.

### c. *Punitive Damages*

In Pennsylvania, a plaintiff may recover punitive damages even when he is not entitled to specific compensatory damages.  *See e.g.*, *Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97 (1989) ("[e]ven though compensatory damages had not been awarded, punitive damages could be appropriate"); *Sprague v. Walter*, 441 Pa. Super. 1, 72 (1995) ("[u]nder Pennsylvania law, punitive damages need bear no proportional relationship to the compensatory damages awarded in a particular case") (citing *Kirkbride*, 521 Pa. at 193-04).  The County Defendants argue that imposition of punitive damages would be contrary to public policy and violate their Due Process rights.  Taha counters that CHRIA explicitly permits exemplary and punitive damages against criminal justice agencies, and that to interpret the statute otherwise would render the punitive damage provisions meaningless.

At the outset, the Due Process clause of the Fifth Amendment provides that "[n]o *person* shall . . . be deprived of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. V (emphasis added).  The County Defendants have failed to cite any precedent to support the suggestion that, as government entities, they are entitled to due process.  Further, there is no precedent for the proposition that punitive damages imposed pursuant to CHRIA are inapplicable to state agencies.  *Taha I*, 2014 WL 695205 at*4-8 (discussing CHRIA and applicability of damages).  In fact, it appears to be quite the opposite: CHRIA specifically regulates governmental criminal justice agencies and, in terms of sanctions, specifies that "any person, *including any agency or organization*, who violates the provisions of this section *shall* be subject to . . . the civil penalties provided in section 9183."  18 Pa. C.S.A. § 9106 (emphasis added).  As discussed at length in *Taha I*, several Pennsylvania courts have also held or assumed that CHRIA provides for damages against government units.  *See e.g.*, *Schmidt v. Deutch Larrimore Farnish*

10

*& Anderson, LLP*, 876 A.2d 1044, 1047 (Pa. Super. Ct. 2005) ("We agree with appellant that the Act clearly provides for civil actions against criminal and non-criminal agencies as well as individuals; the language . . . makes that clear"); *In re Pittsburgh Citizen Police Review Bd.*, 16 Pa. D. & C. 5th at 442 (stating that, if a local police department violated CHRIA, "the city would be subject to . . . damage actions brought by persons aggrieved . . . including exemplary and punitive damages"), *aff'd*, 36 A.3d 631 (Pa. Commw. Ct. 2011), *permission to appeal denied by* 44 A.3d 1163 (Pa. 2012). Thus, this Court predicted in *Taha I* that the Pennsylvania Supreme Court would find that CHRIA "demonstrates a clear legislative intent to hold government entities liable for damages for violation of section 9121." 2014 WL 695205 at *8. Without further guidance from the Pennsylvania Supreme Court since the decision in *Taha I*, this prediction is unchanged. Accordingly, the County Defendants' motion for summary judgment on the award of punitive damages is denied.

### 3. Injunctive Relief

Finally, the County Defendants assert that injunctive and declaratory relief are moot because the Inmate Lookup Tool no longer provides public access to much of the offending data and, in particular, Taha's 1998 incarceration information is no longer available on a central database. Def. Mtn. at 22. Taha argues that the County Defendants have failed to meet their burden of demonstrating that injunctive relief is moot.

A defendant "cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 133 S.Ct. 721, 727 (2013) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 278 (1982)). Where, as here, a defendant claims that voluntary compliance renders an issue moot, he "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonable be expected to recur."

*Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Service (TOC), Inc.*, 528 U.S. 167 (2000)); *see also United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) ("defendants told the court that the interlocks no longer existed and disclaimed any intention to revive them. Such a profession does not suffice to make a case moot").

In support of their motion, the County Defendants have incorporated by reference their Motion in Opposition to Class Certification (ECF No. 104), in which they assert that "all information related to [Taha] has been expunged and removed from the County's OMS database." *Id.* at 11.  Attached to the motion are deposition testimony and an affidavit from Clarke Fulton, Captain of Administrative Affairs ("Fulton") for the Bucks County Department of Corrections (*Id.*, Ex. B, Ex. M), in which Fulton stated, respectively, "I believe [the information] was expunged, but I don't know that for – [sic]," and "[a]fter the County received notice of this lawsuit in 2013, the County deleted all information in its [OMS] database related to Plaintiff Daryoush Taha's 1998 incarceration" *Id.*, Ex. B at 51-52, Ex. M at 2.  Such equivocal statements do not suffice to meet the formidable burden of demonstrating that injunctive relief would be moot.  *Already, LLC*, 133 S.Ct. at 727.  Accordingly, the County Defendants' motion for summary judgment must be denied.

An appropriate Order follows.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

_____
**WENDY BEETLESTONE, J.**

**March 28, 2016**