- FOR PUBLICATION -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DARYOUSH TAHA,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **BUCKS COUNTY PENNSYLVANIA, BUCKS COUNTY CORRECTIONAL FACILITY, and UNPUBLISH LLC, Defendants.** | **NO.  12-6867** |
| **UNPUBLISH LLC** | |
| **Cross Defendant** | |
| **BENSALEM TOWNSHIP** | |
| **Cross Claimant** | |
| **v.** | |
| **BUCKS COUNTY CORRECTIONAL FACILITY RECORDS/ RECORDS CUSTODIAN EMPLOYEES JANE AND/OR JOHN DOE #1-6, BUCKS COUNTY PENNSYLVANIA, TERRANCE P. MOORE, FRANK NOONAN and WILLIAM F. PLANTIER** | |
| **Cross Defendants** | |

## OPINION

### I.    BACKGROUND

Plaintiff Daryoush Taha ("Taha") seeks to be the lead plaintiff in a class action suit brought pursuant to the Pennsylvania Criminal History Record Information Act ("CHRIA"), 18 Pa.C.S.A. § 9101 *et seq*..  Taha alleges that Defendants Bucks County and the Bucks County Correctional Facility (collectively, "the County Defendants"), published the arrest records of thousands of individuals on a public electronic search tool in violation of the anti-dissemination provisions of CHRIA.  Summary judgment has already been granted in Taha's favor as to the County Defendants' liability (ECF No. 146).  Before the Court is Taha's Motion for Class

Certification pursuant to Federal Rule of Civil Procedure 23(a) and (b). For the reasons that follow, Taha's motion is granted.

## II.    FACTS

On September 29, 1998, Plaintiff Daryoush Taha ("Taha") was arrested by members of the Bensalem Police Department and transported to the Bucks County Correctional Facility. Defendant's Statement of Undisputed Material Facts ¶¶ 1-2 ("Def. Facts"); Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ¶¶ 1-2 (Pl. Resp."). Personnel at the Bucks County Correctional Facility took Taha's photograph and he was subsequently charged with harassment, disorderly conduct, and resisting arrest. Def. Facts ¶¶ 3-5; Pl. Resp. ¶¶ 3-5. Taha was released one day later. *Id*. On January 5, 1999, Taha entered the Accelerated Rehabilitative Disposition ("ARD") program. On January 31, 2000, Judge R. Barry McAndrews of the Court of Common Pleas of Bucks County issued an order directing the Clerk of Courts of Bucks County, the Bucks County District Attorney, the district court, and the arresting agency to expunge Taha's "arrest and other criminal records," and directed Bensalem Township to retrieve all arrest records from federal and state agencies that had been issued the information. Def. Facts ¶¶ 10-11; Pl. Resp. ¶¶ 10-11.

In January of 2011, the County Defendants created an electronic search tool that would retrieve corrections data contained in the Offender Management System ("OMS"), a nationwide records management system, and make it available to the public ("the Inmate Lookup Tool"). Def. Facts ¶¶ 13-15; Pl. Resp. ¶¶ 13-15; Plaintiff's Statement of Undisputed Facts ("Pl. Facts") ¶¶ 4-6; Defendants' Response to Plaintiff's Statement of Undisputed Facts ("Def. Resp.") ¶¶ 4-6; Joint Appendix ("JA") at 685.

The following data from Taha's 1998 arrest was available on the Inmate Lookup Tool: a color photograph of Taha from the shoulders up, wearing a blue shirt and pictured against a gray background; sex; date of birth; height; weight; race; hair color; eye color; citizenship; incarceration location; dated committed to incarceration; release date; case number for the crime charged; and "DC, HARASS" listed under "Charge Information."  Pl. Facts ¶ 11; Def. Resp. ¶ 11; Def. Resp. Exhibit A, p. 3.  Additional fields – unfilled in Taha's case – were available for: complexion; hair length; marital status; FBI number; state ID; current housing section; current housing cell; current housing block; current housing bed; alias information; detainer information; bond information; and, under "Charge Information," the grade, degree, and date of offense.  *Id.*

As a reflection of the information available in the Offender Management system, the Inmate Lookup Tool was updated automatically; thus, any additions or subtractions regarding a specific individual's information available on the Inmate Lookup Tool "[weren't] done manually" by the County Defendants.  JA 863, 866.

In September or October of 2011, Taha discovered that his 1998 incarceration information was publicly available through the Inmate Lookup Tool.  Def. Facts ¶¶ 24-27; Pl. Resp. ¶¶ 24-27.  This suit followed.  There is no evidence that Taha was ever denied employment, terminated from a position, or subjected to an adverse employment action because of the information on the Inmate Lookup Tool, and Taha has not alleged that he suffered any pecuniary or economic loss as a result of the Inmate Lookup Tool.  Def. Facts ¶¶ 37-38, 44-45; Pl. Resp. ¶¶ 37-38, 44-45.

In an Order dated March 28, 2016, the Court granted Taha's Motion for Partial Summary Judgement and found that Taha's criminal history record information was wrongfully disseminated to the public in violation of the provisions of Pennsylvania's Criminal History

Record Information Act.  In the accompanying Memorandum, the Court dismissed Taha's claim

for "actual and real damages," leaving open the possibility of an award of punitive damages.

## III.    ANALYSIS

Certification of a proposed class under Rule 23 requires an affirmative demonstration that

the following four requirements of Rule 23(a) are met: "(1) numerosity; (2) commonality; (3)

typicality; and (4) adequacy of representation."  *Krell v. Prudential Ins. Co.* ("*Prudential*"), 148

F.3d 283, 308 (3d Cir. 1998); *Wal-Mart Stores, Inc. v. Dukes* ("*Dukes*"), 564 U.S. 338, 131 S.Ct.

2541, 2551 (2011).  If the plaintiff satisfies the Rule 23(a) criteria, the Court must also determine

whether the proposed class fits within one of the three categories of class actions defined in Rule

23(b).  *Prudential*, 148 F.3d at 308.

The court "will resolve factual disputes by a preponderance of the evidence and make

findings that each Rule 23 requirement is met or is not met, having considered all relevant

evidence and arguments presented by the parties."  *In re Hydrogen Peroxide Antitrust Litig.*, 552

F.3d 305, 320 (3d Cir. 2008).  A plaintiff "must be prepared to prove that there are *in fact*

sufficiently numerous parties, common questions of law or fact, *etc.*"  *Dukes*, 131 S.Ct. at 2550

(emphasis in original).  Failure to meet any of Rule 23(a) or 23(b)'s requirements precludes

certification.  *See Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 147 (3d Cir. 2008).

### 1.   Rule 23(a)

Numerosity requires that the class be so numerous that joinder of all members is

impracticable; Taha asserts, and the County Defendants do not dispute, that more than sixty

thousand individuals were potentially affected by the Inmate Lookup Tool.  Mtn. at 14; Fed. R.

Civ. P. 23(a)(1).  Commonality requires a common question of law or fact among the proposed

class members.  *See e.g.*, *Baby Neal v. Casey*, 43 F.3d 48, 56-57 (3d Cir. 1994).  Taha asserts,

and the County Defendants do not dispute, that the common questions of law and fact are whether the County Defendant's publication of information on the Inmate Lookup Tool willfully violated CHRIA. With respect to the final two considerations of Rule 23(a), "typicality and adequacy inquiries often 'tend[] to merge' because both look to potential conflicts and to 'whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997)). However, the adequacy inquiry will also "factor[] in competency and conflicts of class counsel which the typicality requirement does not." *Beck*, 457 F.3d at 301. Taha asserts, and the County Defendants do not dispute, that Taha is represented by counsel who are highly experienced in matters relevant to the litigation. Mtn. at 17. Based on the declarations attached to Taha's motion for class certification, the Court concludes that counsel has the requisite experience, knowledge, and resources to adequately represent the proposed class. Mtn. Ex. H, I.

In evaluating typicality, a court should ask "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Baby Neal*, 43 F.3d at 55. The County Defendants argue that Taha is atypical because: (1) his arrest information had been ordered expunged; and (2) any award of damages could be uniquely affected by the Taha's Persian[1] heritage. Opp'n at 32-33. Defense counsel's claim at oral argument that "super sensitivity makes [Taha] different than other class members" is not compelling given the Court's decision precluding recovery of "actual and real" damages. Tr. at 16. The plaintiffs' pursuit of exemplary and punitive damages

---

[1] Taha stated in his deposition that he "come[s] from a different culture. In the Persian culture the hierarchy of family is far different . . . When the family name is tarnished, everybody's name is tarnished." JA 49.

5

asks only whether the CHRIA violation was willful; although the statute does not define willful, the analysis necessarily focuses on a defendant's conduct rather than the impact on any one plaintiff.  18 Pa. C.S.A. § 9183(b)(2).  In fact, defense counsel conceded at oral argument that Taha's heritage "was more of an argument for the actual and real damages," which the Court disposed of at the summary judgment stage.  Tr. at 16.  In common sense terms, Taha's claim that his CHRIA-protected information was willfully published on the Inmate Lookup Tool is typical of the class. *Baby Neal*, 43 F.3d at 55.

Therefore, Taha has satisfied the demands of Rule 23(a) in demonstrating numerosity, commonality, typicality, and adequacy.

### 2. **Rule 23(b)**

In addition to the requirements of Rule 23(a), parties seeking class certification must also demonstrate that the class is maintainable under one of the categories of Rule 23(b).  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004).  Taha maintains that the class should be certified pursuant to Rule 23(b)(2) and (3).  Mtn. at 17-21.  The County Defendants oppose on the grounds that individual questions predominate, a class action suit is not superior to other methods of resolving the issues, and the relief sought will not benefit the entire class.  Opp'n at 13, 28, 29.

Rule 23(b)(2) provides that a class action may proceed where the party opposing the class has acted on grounds "that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Because all class members in a Rule 23(b)(2) action will be bound by a single judgment without the ability to opt-out, members "must have strong commonality of interests."  *Gates v. Rohm & Haas Co.*, 655

F.3d 255, 264 (3d Cir. 2011).  This commonality of interests is extinguished when damages are more than just "incidental" to the injunctive or declaratory relief.  *Dukes*, 564 U.S. at 360-61.

Even the most cursory review of Taha's claims and arguments reveal that this case is focused on the award of monetary damages over all else; the County Defendants have even argued that injunctive relief would be moot.  Although Taha's claim for "actual and real" damages was dismissed at the summary judgment stage, other potential class members may yet have "actual and real" claims that would require highly individualized damages calculations. The Court cannot bind the class under Rule 23(b)(2) when monetary damages are not merely "incidental" to injunctive relief.  *Dukes*, 564 U.S. at 360-61.  "[P]laintiffs with individual monetary claims [need] to decide *for themselves* whether to tie their fates to the class representatives' or go it alone—a choice Rule 23(b)(2) does not ensure that they have."  *Id.* at 364 (emphasis in original).  Thus, Taha has not met the requirements of Rule 23(b)(2).

The class may still be certified pursuant to Rule 23(b)(3) if Taha can show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  This Court has already held that the County Defendants improperly published CHRIA protected information on the Inmate Lookup Tool (ECF No. 146).  The only question remaining in this case concerns the award of punitive damages: whether the County Defendants' violation of CHRIA by posting criminal history record information was "willful."  18 Pa. C.S.A. § 9183(b)(2).  The class-wide question of fact as to the County Defendants' willfulness predominates over any individual issues of its potential members.

7

The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of the class action against those of alternative available methods of adjudication." *Prudential*, 148 F.3d at 316.  The County Defendants' sole argument against superiority arises from the potential for individualized determinations of "actual and real damages" which, as discussed *supra*, have already been eliminated from the case.  Given that the size of the class numbers in the tens of thousands, that there is no other pending litigation seeking relief for the same wrongdoing, and that efficiency can be achieved by resolving the issues common to all class members in one suit, a class action is the most viable method of adjudication.

Thus, Taha has met the requirements of Rule 23(b)(3) by demonstrating that questions common to the class predominate over those affecting individual members and that a class action suit is superior to other available methods for fairly and efficiently adjudicating the controversy.

An appropriate Order follows.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

_____

**WENDY BEETLESTONE, J.**