WB

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARYOUSH TAHA,<br>    Plaintiff, | CIVIL ACTION |
| v. | |
| BUCKS COUNTY PENNSYLVANIA,<br>BUCKS COUNTY CORRECTIONAL<br>FACILITY, and UNPUBLISH LLC,<br>    Defendants. | NO. 12-6867 |
| UNPUBLISH LLC<br>    Cross Defendant<br>BENSALEM TOWNSHIP<br>    Cross Claimant | |
| v. | |
| BUCKS COUNTY CORRECTIONAL<br>FACILITY RECORDS/ RECORDS<br>CUSTODIAN EMPLOYEES JANE<br>AND/OR JOHN DOE #1-6, BUCKS<br>COUNTY PENNSYLVANIA, TERRANCE<br>P. MOORE, FRANK NOONAN and<br>WILLIAM F. PLANTIER<br>    Cross Defendants | |



## OPINION

This certified class action arises from Defendants Bucks County Correctional Facility and Bucks County's decision in January 2011 to create an "Inmate Lookup Tool," (the "ILT") through which they published on the internet information about 66,799 individuals who had been held or incarcerated over the course of decades at the Bucks County Correctional Facility. One of the individuals whose information was published, Plaintiff, Daryoush Taha, filed this lawsuit on behalf of himself and all persons whose criminal history record information was made available on the ILT. He claimed that by publishing this information, Defendants Bucks County Correctional Facility and Bucks County violated Pennsylvania's Criminal History Record

1

Information Act ("the CHRIA"), 18 Pa. C.S.A. § 9101 *et seq.*, in particular contravening the portion of the law that prohibits dissemination of "criminal history record information" except in defined circumstances, 18 Pa. C.S.A. § 9121(b)(2). Pending now are cross motions for summary judgment. Defendants maintain that punitive damages are not available to the class—or at the very least that such damages should be capped. Plaintiff argues that Defendants' violation of the CHRIA was willful, and therefore that punitive damages are proper.[1] For the following reasons both motions will both be denied.

## I.  Background

The facts in this case, which are largely undisputed, have already been recounted at length. *See Taha v. Bucks County*, 2016 WL 2345998 (E.D. Pa. May 4, 2016) ("*Taha II*"). The short story is that in September of 1998, Plaintiff Taha was arrested by the Bensalem Police Department and transported to the Bucks County Correctional Facility. *Id.* at *1. He was charged with harassment, disorderly conduct, and resisting arrest; his photo was taken; and he was released the following day. *Id.* Eventually, the Court of Common Pleas of Bucks County ordered the Clerk of Courts of Bucks County, the Bucks County District Attorney, the district court, and the arresting agency to expunge Plaintiff's "arrest and other criminal records." *Id.*

In January of 2011, Defendants launched the ILT—a publicly accessible and searchable electronic database that included information about "individuals who had been held or incarcerated at the Bucks County Correctional Facility from 1938 onward, a total of 66,799 people." *Taha v. County of Bucks*, 862 F.3d 292, 297 (3d Cir. 2017) ("*Taha III*"). While the parties contest the sufficiency of Defendants' preparation, due diligence, and legal research prior to publishing the ILT, they largely agree on the steps that Defendants did and did not take.

---

[1] Because Defendants also argue the willfulness issue in their motion—simply urging the opposite conclusion—Plaintiff's motion will be discussed in tandem with Defendants' argument as to willfulness.

2

Defendants' employees reviewed at least one other county's ILT, discussed the ILT at a meeting of criminal justice professionals, and asked the state police whether certain information should be included in the ILT. They were also repeatedly trained on the protections the CHRIA requires for criminal history record information and on the types of information that qualify as criminal history record information; were aware of the Pennsylvania Attorney General's "Handbook"—according to Defendants, "an authoritative document that you would be reasonable to rely on if you're trying to understand the [CHRIA],"—which defined criminal history record information as the types of information made public by the ILT; had access to a hotline run through Pennsylvania's Commonwealth Law Enforcement Assistance Network that they could call if "there's any doubt as to the propriety" of information to be released, but did not make use of this resource; and proceeded without seeking advice from the Bucks County Solicitor before releasing the information.

Ultimately, the information that Defendants made public about the various class members included "name, race, weight, hair and eye color, arrest dates, arrest charges, and where available the marital status and the FBI and State fingerprint identification numbers." In addition, the ILT included booking photographs for about 47,000 class members. As to Taha himself, the following information became publicly accessible: "a color photograph of Taha from the shoulders up, wearing a blue shirt and pictured against a gray background; sex; date of birth; height; weight; race; hair color; eye color; citizenship; incarceration location; date committed to incarceration; release date; case number for the crime charged; and 'DC, HARASS' listed under 'Charge Information.'" *Taha II*, 2016 WL 2345998, at *1.

Plaintiff sued on December 7, 2012. In the course of resolving various motions, the Court has determined that Defendants violated the CHRIA by disseminating "criminal history

record information," 18 Pa. C.S.A. § 9102 (defining the term), in a manner prohibited by the Act, *Taha v. Bucks County*, 172 F. Supp.3d 867, 872 (E.D. Pa. 2016) ("*Taha I*"), and has also certified a class of "all persons whose criminal history record information was made available on the . . . Inmate Lookup Tool," *Taha v. Bucks County*, 2016 WL 2346000 (E.D. Pa. May 4, 2016) (order); *see also Taha II*, 2016 WL 2345998, at *4 (opinion). The Third Circuit affirmed the class certification decision, noting that "the only remaining factual issue is whether defendants willfully violated CHRIA," *Taha III*, 862 F.3d at 309, because in order to obtain punitive damages a plaintiff must show that any violation of the CHRIA was willful, *see* 18 Pa. C.S.A. § 9183(b)(2).

## II. Legal Standard

Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir. 1989). Materiality of facts is determined by reference to the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute "exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *U.S. ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 93 (3d Cir. 2018) (internal quotation marks omitted). "[A]ll reasonable inferences" must be drawn in the non-moving party's favor. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

When interpreting Pennsylvania statutes, such as the CHRIA, this Court must follow the Pennsylvania Supreme Court. *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016). If the law is unclear and there is no controlling precedent issued by Pennsylvania's highest court, this Court must "predict" how it would rule, giving "due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230

4

F.3d 634, 637 (3d Cir. 2000).

## III. Discussion

### A. Statute of Limitations

Defendants assert that either a one- or two-year statute of limitations applies to the CHRIA, and therefore Taha's claims must be barred because the Amended Complaint was filed on February 26, 2013—more than two years after Defendants' ILT uploaded Taha's criminal history record information onto the internet. This argument is unavailing both because it is waived and because the applicable statute of limitations is six years.

#### i. Defendants have Waived the Statute of Limitations Affirmative Defense

While Defendants did include a statute of limitations defense in their answer, they eschewed multiple opportunities—motions to dismiss, arguments for and against summary judgment, and in response to Plaintiff's class certification briefing—to raise the defense with the Court. Instead, they waited more than six years to do so—after the Court had determined that they were liable for CHRIA violations, after it had certified the class, and after class members had been notified of the Court's decision on liability.[2] Concerned by the delay, the Court ordered briefing on whether Defendants' tardiness in raising the argument warranted a conclusion that they had waived the defense, and now decides that it does.

The statute of limitations is an affirmative defense, Fed. R. Civ. P. 8(c), which "must be raised as early as practicable." *Robinson v. Johnson*, 313 F.3d 128, 137 (3d Cir. 2002). Generally, "the failure to raise an affirmative defense in opposition to a motion for summary

---

[2] Defendants argue that because the parties stipulated that each could file a second motion for summary judgment, the statute of limitations argument is not waived. This conclusion does not follow in this instance: whether Plaintiffs agreed that Defendants could file a second motion does not bear on whether any particular argument asserted in that second motion would be proper. Absent any specific reference in the stipulation anticipating that Defendants would argue the statute of limitations in their second summary judgment motion, the question of waiver turns on an analysis of legal precedent rather than the parties' intentions.

5

judgment constitutes an abandonment of the defense." *United Mine Workers of Am. 1974 Pension v. Pittston Co.*, 984 F.2d 469, 478 (D.C. Cir. 1993); *see also Yanoski v. Silgan White Cap Ams., LLC*, 179 F. Supp.3d 413, 426 (W.D. Pa. 2016) ("It is well-established that a party's failure to argue an issue on summary judgment constitutes a waiver of that issue."). Where "the party raising the defense did not do so at a 'pragmatically sufficient time[,]'" and where allowing the defense would "prejudice" the opposing party and undermine "judicial economy," it is appropriate to conclude that the defense has been waived. *In re Frescati Shipping Co.*, 886 F.3d 291, 313 (3d Cir. 2018) (quoting *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991)); *Robinson*, 313 F.3d at 137. All these concerns are present here.

Defendants did not present the issue within a "pragmatically sufficient time."[3] There were many points during the years of this litigation at which Defendants could have raised it in motion practice, but they failed to do so. *See Fortney v. Tennekoon*, 1998 WL 159047, at *3 (E.D. Pa. Mar. 13, 1998) (refusing to allow defendants to "revisit the issue of liability" at a bench trial on damages because "[a]lthough the opportunity was available to them at the time, the defendants did not adequately raise th[e] argument or present its supporting evidence either in opposition to the plaintiffs' motion for summary judgment or in their own cross-motion").

The failure is not without consequence. On March 28, 2016, the Court entered an Opinion and Order on liability, finding that Defendants' public dissemination of the criminal record history of approximately 67,000 individuals violated the CHRIA. Accordingly, it granted Plaintiff's motion for partial summary judgment on liability, *Taha I*, 172 F. Supp.3d at 872, and subsequently certified a class, *Taha II*, 2016 WL 2345998, at *1. Thus, the only remaining issue

---

[3] Defendants argue that the issue is preserved because they raised it in their answer. True enough, but raising an issue in an answer does not preserve the issue indefinitely—it still must be argued at a "pragmatically sufficient time," and within a timeframe that does not cause Plaintiff "prejudice." *See Robinson*, 313 F.3d at 136 ("We have . . . found a limitations defense to be waived where it was pleaded in the answer, but where it was not pursued before trial.").

6

was whether Defendants had been "willful" in their violation of the Act. *See Taha II*, 2016 WL 2345998, at *1 (ruling that class certification was appropriate because the sole remaining issue after the liability adjudication was whether Bucks could be subject to statutory damages for a willful violation under the CHRIA); *Taha III*, 862 F.3d at 309 ("At this stage of the proceedings in this case, the only remaining factual issue is whether defendants willfully violated CHRIA").

Having won on liability, Plaintiff sought, and the Court allowed, additional time for discovery on the issue of "willfulness." And, upon the Third Circuit affirming this Court's ruling on class certification, the Court approved a notice to class members that explained that the Court had concluded that Defendants were liable for a violation of the CHRIA, that it had dismissed Plaintiff's claims for actual and real damages, and that the issue of whether an award of punitive damages was yet to be decided.

In short, the Plaintiffs have already made, over the course of years, considerable progress in this litigation—progress that would be reversed if Defendants had their druthers. In effect, a ruling that Plaintiff's CHRIA claims are barred by the statute of limitations would subvert this Court's decision that Defendants are liable under the CHRIA and evert the expectations of class members who have been informed of that decision in the class notice. As such, allowing Defendants to assert the statute of limitations argument would work prejudice on the class.

Certainly, judicial economy would not be served by allowing Defendants to assert the statute of limitations at this late stage in the proceedings. Defendants' failure to raise the issue earlier resulted in the Court ruling on the question of liability without benefit of any argument on whether Plaintiff was barred by the statute of limitations. Because a successful limitations defense would mean Defendants win on liability as well as on punitive damages, allowing Defendants to raise the issue now would require Plaintiff to relitigate a question—liability—that

7

has long-since been decided, and would require the Court to "re-decide the motion based on arguments that could have been made earlier but were not," *Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC*, 2018 WL 2862840, at *3 (E.D. Wisc. June 11, 2018)—thus both causing prejudice and undermining judicial economy.[4]

Therefore, Defendants waived the statute of limitations defense.

### ii. Plaintiff's Claims are Not Barred by the Statute of Limitations

Even if the statute of limitations defense were not waived, the statute of limitations does not bar Plaintiff's claims.

The CHRIA contains no explicit statute of limitations. 18 Pa. C.S.A. § 9183(b). Therefore, to determine the applicable limitations period, the Court must consider generally applicable statutes of limitations for Pennsylvania civil actions. The parties point to three potential limitations periods: One year for "[a]n action for libel, slander or invasion of privacy," 42 Pa. C.S.A. § 5523(1); two years for a variety of specific torts and "[a]ny other action . . . to recover damages for injury . . . which is founded on negligent, intentional, or otherwise tortious conduct," *id.* § 5524(7); and six years for "[a]ny civil action . . . which is neither subject to another limitation . . . nor excluded from the application of a period of limitation," *id.* § 5527(b).

The six-year statute of limitations applies. The one-year statute of limitations is clearly inapplicable, and as between the remaining options of the two- and six-year statutes of limitations, persuasive case law in Pennsylvania leads to the conclusion that the six-year statute of limitation is the better fit with the CHRIA. Because Plaintiff brought his claim on December

---

[4] Defendants also argue that Plaintiff himself waived the argument that Defendants waived the statute of limitations defense. These argument ignores that the Court can, and did in this case, raise the issue *sua sponte*. *See Harper v Del. Valley Broadcasters, Inc.*, 743 F. Supp. 1076, 1090 (D. Del. 1990), *Youngblood Grp. v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F. Supp. 859, 876 (E.D. Tex. 1996); *cf United States v. Gimbel*, 782 F.2d 89, 91 n.5 (7th Cir. 1986) ("[I]t is beyond cavil that" federal circuit courts may "raise the issue of waiver *sua sponte*[.]").

8

7, 2012—well within the six-year period—Plaintiffs claims are not barred.

### a. One-Year Statute of Limitations Does Not Apply

The Pennsylvania one-year statute of limitations for "libel, slander or invasion of privacy" actions does not govern here. Defendants have been found liable under Section 9121 of the CHRIA, which prohibits dissemination of certain criminal history record information to "an individual or non-criminal justice agency." *Taha I*, 172 F. Supp.3d at 870. This is neither a cause of action for libel, nor for slander, nor for invasion of privacy. Indeed, there is almost no overlap between the elements of the cause of action that is arguably most similar, invasion of privacy, and the elements Plaintiff established to prove a violation of the CHRIA. *Compare Pro Golf Mfg., Inc. v. Tribune Rev. Newspaper Co.*, 570 A.2d 254, 248 (Pa. 2002) (noting that invasion of privacy requires (1) "an intentional intrusion on the seclusion of [a plaintiff's] private concerns which was substantial and highly offensive to a reasonable person" that would have (2) "caused mental suffering, shame or humiliation to a person of ordinary sensibilities") *with* 18 Pa. C.S.A. § 9121(b)(2) (defining violation of the CHRIA to entail the dissemination of criminal history record information to individuals or noncriminal justice agencies without having excised "all notations of arrests, indictments or other information relating to the initiation of criminal proceedings where: [1] three years have elapsed from the date of arrest; [2] no conviction has occurred; and [3] no proceedings are pending seeking a conviction").

Defendants' argument to the contrary elides the difference between a cause of action and a type of harm. Just because a violation of a law implicates privacy interests does not transform the violation into an invasion of privacy tort and subject it to a one-year statute of limitations. *See Burger v. Blair Med. Assocs., Inc.*, 928 A.2d 246, 251 (Pa. Super. 2007) (refusing to find "the tort of breach of physician-patient confidentiality" as governed by the one-year statute of

9

limitations); *Boettger v. Miklich*, 599 A.2d 713, 716-17 (Pa. Commw. 1991), *rev'd on other grounds*, 633 A.2d 1146 (Pa. 1993) (refusing to find a violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. § 5725, to be covered by the one-year statute of limitations because it "is a distinct cause of action" from Pennsylvania invasion of privacy).

### b. The Six-Year Statute of Limitations Applies

With the inapt one-year statute of limitations eliminated, two options remain: the six-year statute of limitations for "[a]ny civil action . . . which is neither subject to another limitation . . . nor excluded from the application of a period of limitation," 42 Pa. C.S.A. § 5527(b), and the two-year statute of limitations, for various specific torts and "[a]ny other action . . . to recover damages for injury . . . which is founded on negligent, intentional, or otherwise tortious conduct," *id.* § 5524(7).

The Pennsylvania Supreme Court does not appear to have offered an analytical framework for addressing situations, as here, where two separate catchall statute of limitations provisions might each plausibly be implicated. However, the Pennsylvania Superior Court, in *Gabriel v. O'Hara*, 534 A.2d 488 (Pa. Super. 1987), provided a broadly applicable and well-reasoned analysis that is regularly cited by Pennsylvania courts. In that case, the Superior Court held that the six-year period applied to Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), largely because it concluded that the UTPCPL is "*sui generis*," that is, "[o]f its own kind or class," Black's Law Dictionary 1662 (10th ed. 2014). *Gabriel*, 534 A.2d at 494. The *Gabriel* court explained that the UTPCPL "encompasses an array of [causes of action] that might be analogized to passing off, misappropriation, trademark infringement, disparagement, false advertising, fraud, breach of contract, and breach of warranty." *Id.*

10

(footnotes omitted). To determine the appropriate statute of limitations, the court declined to simply apply "the most closely analogous limitations period" for any given cause of action, recognizing that this approach would "yield[] inconsistent determinations." *Id.* As a practical illustration of the potential inconsistency, *Gabriel* compared the trial court's ruling—that "[a]n action pursuant to the UTPCPL must necessarily sound in fraud or deceit" and therefore is subject to the two-year statute of limitations, *id.* at 493 (alterations omitted)—with the Eastern District of Pennsylvania's interpretation of the UTPCPL in a different case—that the cause of action there was "essentially a claim for libel" and therefore subject to the one-year statute of limitations, *id.* at 493-94 (quoting *Merv Swing Agency, Inc. v. Graham Co.*, 579 F. Supp. 429, 430 (E.D. Pa. 1983)) (alterations omitted). To avoid such "uncertainty and inconsistency," the Superior Court in *Gabriel* held that the "uniform six-year statute of limitations" to such *sui generis* statutes, including all claims arising under the UTPCPL. *Id.* at 494.

Plaintiff argues the same reasoning applies to the CHRIA because application of a uniform six-year period is the only way to avoid "uncertainty and confusion." And indeed, the concerns motivating the *Gabriel* court apply to the CHRIA as well. Like the UTPCPL, the CHRIA both lacks an explicit statute of limitations and "encompasses an array of practices," *Gabriel*, 534 A.2d at 494, that sound in various areas of law. The CHRIA provides, for example, that criminal history record information shall be disseminated "to any individual or noncriminal justice agency only upon request," 18 Pa. C.S.A. § 9121(b), that criminal history record information "shall be expunged" under a variety of circumstances, *id.* § 9122(a), that state licensing agencies "shall not" consider certain criminal history record information when determining eligibility for professional licenses and certifications, *id.* § 9124(a), (b), that private employers may only consider criminal history record information in certain circumstances, *id.*

11

§ 9125, that criminal justice agencies "shall ensure the confidentiality and security of criminal history record information" through several specified procedures, *id.* § 9131, and more.

Thus, both the UTPCPL and the CHRIA are statutes under which "multifarious claims" may be brought. *Gabriel*, 534 A.2d at 495. These heterogenous claims can be analogized to various Pennsylvania common law causes of action (or have no common law analog at all)—and Defendants' assertions to the contrary notwithstanding, not all of which necessarily sound in tort. As with the UTPCPL, applying a statute of limitations other than the 6-year catchall to the CHRIA would cause plaintiffs "uncertainty" as to "which limitations period governed their . . . claim until the court determined whether their claim more closely resembled a tort action, a contract action, or an action under some other statute." *Id.* at 494. And plaintiffs would face "inconsistency" to the extent that courts analogize the various violations of the CHRIA to different common law causes of action. *Id.*[5]

For the reasons set forth above, this Court predicts that the Pennsylvania Supreme Court would hold that the six-year statute of limitations applies to violations of the CHRIA and applies that time period here.

### B. Punitive Damages Against Government Agencies

In the course of this lawsuit, both the Third Circuit and this Court—twice—have held that the CHRIA abrogates sovereign immunity such that state agencies may be held liable for punitive damages under the statute. *Taha III*, 862 F.3d at 305-08; *Taha v. Bucks County*, 2014 WL 695205, at *4-8 (E.D. Pa. Feb. 21, 2014); *Taha I*, 172 F. Supp.3d at 873. Defendants seek to

---

[5] In fact, Defendants litigation position serves as a proof of concept. Defendants argued that the one-year statute of limitations applies because Plaintiff's claim under the CHRIA is comparable to defamation and invasion of privacy claims, and then in the very same brief went on to argue that the two-year statute of limitations is proper because "CHRIA is a statutorily-created tort action" that caused Plaintiff to suffer emotional distress. That Defendants can purport to make plausible arguments for both statutes of limitations only underscores the degree to which *ex ante* plaintiffs would be required to guess as to the applicable limitations period.

12

revisit these rulings—and have the Court find that the CHRIA does not authorize punitive damages against government agencies—in light of *Doe v. Franklin County*, 174 A.3d 593 (Pa. 2017), an intervening Pennsylvania Supreme Court decision that held that the Pennsylvania Uniform Firearms Act, 18 Pa. C.S.A. § 6111(i), "did not specifically and intentionally abrogate high public official immunity[.]" *Franklin County*, 174 A.3d at 608. Defendants claim that *Franklin County* reflects a newly elevated standard for how "explicitly" the Pennsylvania General Assembly must abrogate immunity, and that the Third Circuit held in *Taha III* that immunity had only been "implicitly" abrogated. *Franklin County* does not change the analysis here, both because it does not change the applicable law and because—contrary to Defendants' assertion—the Third Circuit already held that the CHRIA "explicitly" abrogates immunity.

In *Franklin County*, the Pennsylvania Supreme Court explained that abrogation of sovereign immunity must be "expressly stated," *id.* at 608 (citing *Zauflik v. Pennsbury Sch. Dist.*, 72 A.3d 773, 797 (Pa. Commw. 2013)), and that it "ha[d] consistently held that where the General Assembly intends to provide exceptions to immunity, such exceptions must be specifically and explicitly expressed." *Id.* at 605 (citing *Zauflik v. Pennsbury Sch. Dist.*, 104 A.3d 1096, 1127 (Pa. 2014)). This is the same standard that has been in effect since the beginning of this litigation, and the same standard that the Third Circuit applied in affirming this Court's conclusion that sovereign immunity had been abrogated. Indeed, the Third Circuit directly rejected the argument that the CHRIA did not expressly abrogate sovereign immunity: "[Defendants] argue that the penalties provision does not *expressly* allow punitive damages to be imposed on a government agency. We disagree." *Taha III*, 862 F.3d at 306 (emphasis added).

### C. Willful Violation

Section 9183 of the CHRIA provides for punitive damages where a violation was

13

"willful." 18 Pa. C.S.A. § 9183. Defendants contend that punitive damages are unavailable because their conduct was not willful. The parties spar over both the definition of "willful" in the context of the CHRIA, and whether that definition encompasses Defendants' conduct.

### i. Standard for Willfulness

To date, no court has set a standard for what rises to the level of a "willful" violation as used in Section 9183 of the CHRIA. In the absence of controlling authority, Plaintiff argues that it should be defined as amounting essentially to "reckless indifference," whereas Defendants argue it should be defined as requiring that they "actually knew their conduct was illegal."

Plaintiff contends that willfulness in the context of the CHRIA amounts to "reckless indifference" because that is the definition for willfulness at common law, *see, e.g., Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 361-62 (3d Cir. 2015) (applying Pennsylvania law); *Hutchison v. Luddy*, 870 A.2d 766, 770-71 (Pa. 2005), and unless a statute states otherwise, "[s]tatutes are never presumed to make any innovation in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions," *In re Trust Under Deed of David P. Kulig Dated Jan. 12, 2001*, 175 A.3d 222, 231 (Pa. 2017) (quoting *Rahn v. Hess*, 106 A.2d 461 (Pa. 1954)). Plaintiff also observes that Pennsylvania statutes that do define "willfulness" frequently do so in terms of "reckless indifference" or "reckless disregard." *See, e.g.*, 12 Pa. C.S.A. § 5302; 43 Pa. C.S.A. § 167.6. Thus, he argues that the baseline presumption for punitive damages is the common law rule of reckless disregard, and that including the word "willful" in the text of CHRIA does nothing to overcome that presumption because that word is frequently used to mean "recklessness."

Defendants, on the other hand, contend that the presumption that "willful" means "reckless disregard" is defeated by the CHRIA's relationship to another statute: Pennsylvania's

14

Political Subdivision Tort Claims Act (the "Tort Claims Act"), 42 Pa. C.S.A. § 8541 *et seq.* Defendants argue that the CHRIA and the Tort Claims Act are *in pari materia*—or, "upon the same matter or subject"—and as a result must be construed together as one law. Thus, according to Defendants, because "willfulness" under the Tort Claims Act requires "a showing of intention to do what is known to be wrong," *In re City of Phila. Litig.*, 158 F.3d 723, 728 (3d Cir. 1998), to interpret the two statutes consistently this Court must apply that same elevated standard for willfulness to the CHRIA.

In support of this theory, Defendants primarily point to *Kilgore v. City of Philadelphia*, 717 A.2d 514 (Pa. 1998), a case in which the Pennsylvania Supreme Court declared that "[s]tatutes dealing with governmental and sovereign immunity are to be interpreted consistently, as they deal with indistinguishable subject matter." *Id.* at 516 n.2. Defendants then observe that the Tort Claims Act "legislatively raises the shield of governmental immunity against any damages . . . caused by any act of a local agency or employee . . . except as otherwise provided," *Mascaro v. Youth Study Ctr.*, 523 A.2d 1118, 1120 (Pa. 1987), and that the CHRIA, too, deals with governmental immunity insofar as it allows for suit against local agencies. According to Defendants, therefore, *Kilgore* requires that "willfulness" in the CHRIA be interpreted consistently with "willfulness" in the Tort Claims Act, *i.e.*, defined as "a showing of intention to do what is known to be wrong."

This Court predicts that the Pennsylvania Supreme Court would conclude that the CHRIA and the Tort Claims Act are not *in pari materia*, and therefore would define "willful" in the CHRIA as requiring a showing of reckless disregard or indifference.[6] The problem with

---

[6] Even if the statutes were *in pari materia*, Defendants proposed definition of what "willfulness" entails under the Tort Claims Act is incorrect. The "intention to do what is known to be wrong" or "intending to commit an intentional tort" standard derives from *Renk v. City of Pittsburgh*, 641 A.2d 289 (Pa. 1994), and generally applies only to police misconduct cases. Otherwise, for conduct to be "willful" under the Tort Claims Act, the

15

Defendants' argument is that *Kilgore* does not stand for the broad proposition that *any* statute touching upon governmental or sovereign immunity is *in pari materia* with all other statutes that touch upon governmental or sovereign immunity. Instead, *Kilgore* stands only for the proposition that the Tort Claims Act is *in pari materia* with one specific statute: the Pennsylvania Sovereign Immunity Act, 42 Pa. C.S.A. § 8521 *et seq*. There are many reasons to read it as such, specifically:

- The only statutes that *Kilgore* affirmatively addressed were the Tort Claims Act and the Sovereign Immunity Act.

- The cases on which *Kilgore* relied each hold specifically that the Tort Claims Act and the Sovereign Immunity Act are to be interpreted consistent with one another—not that all statutes that touch on governmental immunity of any type must be interpreted *in pari materia*. *See Finn v. City of Philadelphia*, 664 A.2d 1342, 1344 (Pa. 1995); *Kiley by Kiley v. City of Philadelphia*, 645 A.2d 184, 186 (Pa. 1994); *Crowell v. City of Philadelphia*, 613 A.2d 1178, 1183 n.8 (Pa. 1992).

- The cases relied on by *Kilgore* each post-date enactment of the CHRIA, but several of them refer to "the two statutes dealing with immunities," which they explain are the Tort Claims Act and the Sovereign Immunity Act. The cases make no mention of the CHRIA. *See Finn*, 645 A.2d at 1144; *Crowell*, 613 A.2d at 1183 n.8. The exclusion of the CHRIA from these statements suggests that the Pennsylvania Supreme Court does not view the CHRIA as "dealing with immunities," at least for purposes of the *in pari materia* canon of construction.

- While the Tort Claims Act and the Sovereign Immunity Act are nearly structurally identical, the CHRIA is distinct. The Tort Claims Act and Sovereign Immunity Act each state as a general rule that there will be no waiver of immunity (the Tort Claims Act for local agencies and the Sovereign Immunity Act for the Commonwealth), *see* 42 Pa. C.S.A. § 8541; 42 Pa. C.S.A. § 8521, and then lay out a set of exceptions to that general rule, *see* 42 Pa. C.S.A. § 8542; 42 Pa. C.S.A. § 8522. Indeed, many of the exceptions are substantively identical. On the other hand, the CHRIA functions entirely differently, laying out rules for the collection and dissemination of criminal history information, and defining damages recoverable from governmental agencies that violate the rules. In other words, the CHRIA does not deal in "indistinguishable subject matter." *Kilgore*, 717 A.2d at 516 n.2.

---

governmental employee merely must "desire to bring about the result that followed his conduct or be aware that it was substantially certain to follow." *Kuzel v. Krause*, 658 A.2d 856, 859 (Pa. Commw. 1995); *see also Evans v. Phila Transp Co.*, 212 A.2d 440, 443 (Pa. 1965). As *Renk* and other subsequent opinions have explained, a heightened standard for the police is necessary because otherwise police could be found to have committed intentional torts simply by effectuating arrests. *See Renk*, 641 A.2d at 293; *Brummell v. City of Harrisburg*, 2010 WL 3896382, at *3-4 (M.D. Pa. Sept. 30, 2010). Outside of police misconduct cases, however, the heightened standard does not apply.

16

- Because the CHRIA is far from the only Pennsylvania statute "dealing with governmental and sovereign immunity" by contemplating monetary redress against government entities, *see, e.g.*, 44 Pa. C.S.A. § 2333, 62 Pa. C.S.A. § 3935, application of Defendants' proposed interpretation of *Kilgore* would reach significantly further than the Pennsylvania Supreme Court appeared to have intended.[7]

In sum, there is nothing to suggest that the *Kilgore* court had the CHRIA in mind, nor anything to suggest that the doctrine of *in pari materia* should nevertheless apply. For the reasons set forth *supra*, the Court predicts that the Pennsylvania Supreme Court would define "willful" in the CHRIA to mean "realized the risk and acted in conscious disregard or indifference to it," or "reckless disregard," and applies that standard here.

### ii. Application

Whether or not the Defendants' conduct in this instance was "willful" is a question of fact and, thus, a jury question unless "there is no legally sufficient evidentiary basis for a reasonable jury to find for" the non-moving party. *Souryavong v. Lackawanna County*, 872 F.3d 122, 126 (3d Cir. 2017) (internal quotation marks omitted). Here, the parties largely agree on the facts, but interpret them differently to support their respective positions on the question of willfulness under the CHRIA. As a reasonable jury could answer that question either way, the Court must deny summary judgment to both parties on that issue.

### D. Single Violation Versus Multiple Violations

---

[7] Although Defendants do not point to these cases, it is worth noting that in a few instances Pennsylvania courts do apply the *in pari materia* canon of construction between the Sovereign Immunity Act and some other statute that merely allows for monetary redress against state actors. *See Goryeb v. Com. Dep't of Pub. Welfare*, 575 A.2d 545, 548 (Pa. 1990); *Ithier v. City of Philadelphia*, 585 A.2d 564, 566 (Pa. Commw. 1991). However, as compared with Defendants' proposed application of the principle, the Pennsylvania courts in those cases take a notably narrower approach by only holding that specific, overlapping sections of each act needed to be construed consistent with one another. So, for example, in *Goryeb* the Pennsylvania Supreme Court reconciled a provision of the Mental Health Procedures Act that allowed for liability of persons involved in certain medical decisions, 50 Pa. Stat. Ann. § 7114, with a specific exception to sovereign immunity for "health care employees of Commonwealth [actors]" found in the Sovereign Immunity Act, 42 Pa. C.S.A. § 8522(b)(2). Such reconciliation of the two overlapping statutes is a far stretch from Defendants' claim that all words in the Tort Claims Act and all words in all statutes that allow for damages against government actors must be construed *in pari materia*.

17

The CHRIA provides that "[e]xemplary and punitive damages of not less than $1,000 nor more than $10,000 shall be imposed for any violation . . . found to be willful." 42 Pa. C.S.A. § 9183(b)(2). The parties dispute the meaning of the word "violation." Defendants contend that even though they violated the statute, they only violated it once—when the ILT first was published—and therefore punitive damages must be capped at $10,000. Plaintiff, on the other hand, contends that each release of criminal history record information—that is, the releases as to each of the 66,799 class members—constituted a violation of the statute.

Defendants' argument relies on a key assumption: that a "violation" is synonymous with an "act." Thus, because they only implemented the ILT once, there was only one violation of the CHRIA. But this assumption is mistaken. Comparison to traditional torts illustrates the point. If a tortfeasor breaks into a single computer, obtains private information relating to five different people, and publishes that information, the tortfeasor has violated five different peoples' rights and could give rise to five different causes of action, despite only engaging in one act. Plaintiff offers a similarly apt analogy: The Telephone Consumer Protection Act allows recovery of $500 for "each" violation of the statute, 47 U.S.C. § 227(b)(3)(B), which includes certain uses of "automatic telephone dialing system[s]," *id.* § 227(b)(1)(A). Although an autodialer can "dial numbers without human intervention," and some can make thousands of calls at once, *ACA Int'l v. F.C.C.*, 885 F.3d 687, 694 (D.C. Cir. 2018) (internal quotation marks omitted); *Blow v. Bijora, Inc.*, 855 F.3d 793, 802 (7th Cir. 2017), recovery of $500 per call is allowed, *see, e.g., Daubert v. NRA Grp., LLC*, 861 F.3d 382, 388 (3d Cir. 2017). Although each individual call does not require an act, each call nevertheless constitutes a violation of the statute.

Defendants argue that rejecting their definition would require the imposition of unreasonable statutory damages—at a minimum, a figure of about $67 million, but theoretically

18

as much as about $670 million—which would contravene the intent of Pennsylvania's General Assembly. At a superficial level, Defendants may be right: In Pennsylvania, it is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable," 1 Pa. C.S.A. § 1922, and minimum punitive damages of $67 million could conceivably fit that bill. Nevertheless, in Section 9183(b)(2) the General Assembly clearly expressed its purpose of imposing punitive damages on a per-violation basis. Regardless of how the provision plays out in litigation, it is not within the purview of this Court to circumvent the legislature's clearly expressed language.[8]

Neither do the cases cited by Defendants support their position. In *United States v. Gregg*, 226 F.3d 253 (3d Cir. 2000), the Third Circuit addressed a statute that prohibited the obstruction of access to reproductive health clinics and provided for "an award of statutory damages in the amount of $5,000 per violation." *Id.* at 258 (quoting 18 U.S.C. § 248(c)(1)(B)). The question in *Gregg* was whether the statutory damages per violation were to be imposed separately as to *each defendant*, such that each defendant would be assessed damages of $5,000 per violation—not whether multiple violations had occurred. The *Gregg* panel simply did not address the question that is presented here. In *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.*, 676 F.2d 56 (3d Cir. 1982), the Third Circuit interpreted the word "occurrence" in the context of insurance law. The panel explained—again, in the insurance context—"an occurrence is determined by the cause or causes of the resulting injury" and a court must ask "if there was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damages." *Id.* at 60 (quoting *Bartholomew v. Ins. Co. of N. Am.*, 502 F. Supp. 246,

---

[8] Moreover, there has been no finding of "absurd" liability in this case, and if a jury ultimately does return a verdict along those lines, Defendants will no doubt take the opportunity to argue against imposition of that verdict. *Cf. BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996) (holding that "grossly excessive" punitive damages may violate due process).

19

251 (D.R.I. 1980)). This Court declines Defendants' invitation to import the insurance-specific definition of the word "occurrence," and apply it to the word "violation" in the CHRIA. Finally, in *Tomasello v. Rubin*, 167 F.3d 612 (D.C. Cir. 1999), the Court of Appeals for the District of Columbia addressed a violation of the Privacy Act, 5 U.S.C. § 552a, which examined whether damages arising out of sending a letter to 4,500 separate people could be assessed on a per-letter basis. 167 F.3d at 617. The analogy between *Tomasello* and this case fails because Plaintiff's claim does not turn on the number of people to whom private information was impermissibly sent, but rather on the number of class members whose information was published.

### E. Damages Cap

Finally, Defendants argue that any punitive damages under the CHRIA must be capped at $500,000 under the Tort Claims Act. *See* 42 Pa. C.S.A. § 8553(b). The only reason Defendants offer for applying the damages cap from an entirely different statute to the CHRIA is based on policy concerns about the potential scope of liability. But, real though those concerns may be, that is not a reason to arbitrarily import an unrelated damages cap from a separate statute. Moreover, doing so would directly contravene the Tort Claims Act itself, which specifically limits the damage cap to "[a]ctions for which damages are limited *by reference to this subchapter*," *id.* (emphasis added), yet the CHRIA makes no reference to the Tort Claims Act.

For the foregoing reasons, both parties' motions for summary judgment will be denied. An appropriate order follows.

February 14, 2019

BY THE COURT:

_____
WENDY BEETLESTONE, J.