IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARYOUSH TAHA,<br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>BUCKS COUNTY, et al.,<br>　　　　　　Defendants. | CIVIL ACTION NO. 12-6867<br><br>CLASS ACTION |

**MEMORANDUM OPINION**

Bucks County and the Bucks County Correctional Facility ("Defendants") move to strike the reports and otherwise preclude the testimony of Plaintiff's proposed experts, Sarah Lageson, PhD, and Richard J. Subia. For the reasons that follow, Defendants' motion as to Lageson will be granted in part and denied in part, and Defendants' motion as to Subia will be denied.

**I.　　Background**

Plaintiff Daryoush Taha brought this class action under Pennsylvania's Criminal History Record Information Act ("CHRIA"), 18 Pa. C.S.A. §§ 9101 *et seq.*, alleging that Defendants illegally published the arrest records of thousands of individuals on a publicly searchable "Inmate Lookup Tool." *Taha v. County of Bucks*, 862 F.3d 292, 296-98 (3d Cir. 2017). Summary judgment has been granted to Plaintiff on the question of liability, and the only pending issues are whether Defendants' are subject to punitive damages for their violations of the CHRIA because the violations were "willful," and if so, the amount of those punitive damages. *Id.* at 308.

Lageson's report addresses "the social, professional, and emotional consequences for the person portrayed in an inmate lookup tool" and opines on harms associated with the release of criminal history information. Defendants do not contest that she is qualified to testify on these matters given her position as an Assistant Professor at the Rutgers University-Newark School of

1

Criminal Justice, her Masters and Doctorate degrees in sociology, and her teaching and research on "criminal records, expungement, and the impact of digital technologies on the administration of criminal justice." They do, however, contend, that her testimony will not assist the trier of fact and must, therefore, be precluded.

In contrast, Subia's qualifications to testify are at issue to testify. His proposed testimony concerns the "adequacy and competency of the processes and procedures employed . . . in connection with the [Bucks County Department of Corrections]' compliance efforts under [the CHRIA]." Plaintiff's maintain that Subia's qualifications flow from, *inter alia*, his 32 years of "experience and training," including "26 years of experience with the California Department of Corrections and Rehabilitation," work in four different prisons, responsibilities "for administering the housing, programs, and operation of over 162,000 inmates in all 33 California adult prisons," and experience working on an "integrated electronic offender management system" that "improv[ed] staff and inmate safety with secure access to accurate and complete offender information."

**II. Discussion**

"The Federal Rules of Evidence embody a strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 780 (3d Cir. 1996) (internal quotation marks omitted). "Rule 702, which governs the admissibility of expert testimony, specifically embraces this policy, . . . and has a liberal policy of admissibility." *Id.* (citations omitted). The Rule "has three major requirements: (1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [, *i.e.*, reliability]; and (3) the expert's testimony must assist the trier of fact [, *i.e.*, fit]." *United States v.*

*Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (alterations in original) (citation omitted). *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-95 (1993).

A. *Lageson*

Defendants argue that Lageson's expert testimony will not assist the trier of fact and therefore fails the "fit" prong. For expert testimony to satisfy the "fit" requirement of Rule 702, "[t]here must be a valid connection between the expertise in question and the inquiry being made in the case." *United States v. Velasquez*, 64 F.3d 844, 850 (3d Cir. 1995) (citation omitted). Accordingly, when faced with a proffer of expert testimony, a court must ask whether the testimony "is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Schiff*, 602 F.3d at 173 (quoting *Daubert*, 509 U.S. at 591). "The 'standard is not that high,' but 'is higher than bare relevance.'" *Id.* (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)).

Defendants contend that Lageson's proposed testimony would not help a trier of fact because it speaks to the effects that Defendants' conduct had on class members rather than whether Defendants' conduct was willful in the first place. Plaintiffs, for their part, offer no cogent explanation for how Lageson's proposed testimony and report would bear on the willfulness of Defendants' actions. Therefore, as to the question of "willfulness" itself, Defendants' motion will be granted.

However, should the jury determine that Defendants' violation of the CHRIA were "willful," it must then determine an "appropriate punitive damage award" and, in doing so, may consider, among other things, "the nature and extent of [the] victim's harm." *Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 802-03 (Pa. 1989). To the extent that Lageson's testimony goes

3

to that issue, it will be allowed.[1]

   B. *Subia*

Defendants argue that Subia's testimony should be excluded because he is not qualified to testify about the "adequacy and competency of the processes and procedures employed by the Bucks County Department of Corrections." More specifically, they contend that although his proposed testimony includes his views on Defendants' compliance with national standards in the correctional industry, "nothing in his background . . . show[s] that he has specialized knowledge of prison systems outside of California."

Defendants' argument is unavailing. To satisfy the "qualification" requirement, Subia must possess "specialized expertise." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). Rule 702 embodies a "liberal" policy for admissibility that allows "a broad range of knowledge, skills, and training [to] qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 741. As the Third Circuit has explained, "it is an abuse of discretion to exclude [expert] testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Pineda*, 520 F.3d at 244.

Here, Plaintiffs have satisfied the "qualification" requirement because Subia's "expertise" is based on "26 years of experience with the California Department of Corrections and Rehabilitation" in a variety of areas including "administration, management, supervision, and line-staff duties," having worked in four different prisons, and having been "responsible for

---

[1] Defendants suggest in their brief that the trial should be bifurcated such that the jury would be charged with determining in the first phase the question of willfulness and, only upon it deciding that question in the affirmative, would testimony be allowed in the second phase of the trial on punitive damages. Having cited to no authority in support of this argument, Defendants have waived it. *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . but not squarely argued, are considered waived.") (Alito, J.).

4

administering the housing, programs, and operation of over 162,000 inmates in all 33 California adult prisons, as well as all out-of-state contract facilities housing over 9,5000 California offenders in private prisons." These experiences adequately show that Subia has "specialized expertise" such that he is qualified to testify about the opinions he sets forth in his report.[2] That, of course, is not the end of the story in that the geographic scope of Sabia's expertise is an appropriate matter for cross-examination and may, or may not as the case may be, bear on the weight that the jury accords his testimony. *Kannankeril v. Terminix Int'l., Inc.*, 128 F.3d 802, 809 (3d Cir. 1997) ("If the expert meets liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility."). Therefore, Defendants' motion as to Subia will be denied.

An appropriate order follows.

**BY THE COURT:**

**/S/Wendy Beetlestone, J.**

**WENDY BEETLESTONE, J.**

**Date: 4/29/2019**

---

[2] Defendants rely heavily on *Smith v. District of Columbia*, 306 F. Supp.3d 223 (D.D.C. 2018), in support of their contention that Subia is not qualified. In *Smith*, the court concluded that a party had not "prove[d] a national standard of care" where an expert witness had "failed to connect . . . evidence" relating to federal practices to "what is done at the state and local [level]." *Id.* at 264. Defendants' reliance on *Smith*, however, is misplaced: In *Smith* the question of the expert's qualification and/or the admissibility of his testimony was not before the court; rather, the court solely analyzed whether the party had "prove[d]" the national standard for care. Thus, the *Smith* court was not asked to opine on and, thus, did not evaluate the expert's qualifications.