IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARYOUSH TAHA,<br>                    **Plaintiff,**<br><br>         v.<br><br>BUCKS COUNTY PENNSYLVANIA,<br>BUCKS COUNTY CORRECTIONAL<br>FACILITY,<br>                    **Defendants.** | CIVIL ACTION<br><br><br><br>NO.  12-6867 |

## MEMORANDUM OPINION

After almost eight years of contentious class action litigation, named Plaintiff Daryoush

Taha files an unopposed motion for final approval of the parties' amended settlement agreement,

as well as a motion for attorneys' fees, expenses, and a service award.  Having reviewed and

considered the motions and related filings, and having held a final fairness hearing, Plaintiff's

motions shall be granted, and the parties' amended settlement agreement shall be finally

approved.

### I.     BACKGROUND

The facts of this case have been detailed at length.  *See, e.g.*, *Taha v. Bucks County*, 2016

WL 2345998 (E.D. Pa. May 4, 2016).  In brief, this action arises from an "Inmate Lookup Tool"

("ILT") created by Defendants Bucks County Correctional Facility ("BCCF") and Bucks

County, through which they published on the internet information – such as photographs, state

fingerprint identification numbers, arrest dates, and arrest charges – about individuals held or

incarcerated at BCCF from 1938 onward.  Launched in January 2011, the ILT was publicly

searchable and included information for those, like Plaintiff Taha, whose criminal records were

subsequently expunged.  Defendants' database was not secure, and several private companies

republished Plaintiff's booking photograph and other information about him on their websites.

Plaintiff filed this action on December 7, 2012, and later amended his complaint to bring suit on behalf of himself and all persons whose criminal history record information was made available on the ILT.  He alleged that Defendants' publication of this information violated the anti-dissemination provisions of Pennsylvania's Criminal History Record Information Act ("CHRIA"), 18 Pa. C.S.A. § 9101 *et seq.*  The Court granted Plaintiff partial summary judgment on liability in March 2016, holding that the ILT violated the CHRIA by disseminating "criminal history record information" in a manner prohibited by the Act.  *Taha v. Bucks County*, 172 F. Supp.3d 867, 872 (E.D. Pa. 2016).  The Court dismissed, however, Plaintiff's claim for "actual and real damages," finding that Plaintiff did not suffer any actual injury – *i.e.*, economic loss – resulting from Defendants' actions.  *Id.*  The only outstanding issue was whether Defendants' CHRIA violation was "willful," thereby warranting punitive damages.  *See* 18 Pa. C.S.A. § 9183(b)(2).  In May 2016, the Court certified a punitive damages class consisting of "all persons whose criminal history record information was made available on the BCCF Inmate Lookup Tool."  *Taha*, 2016 WL 2345998, at *4.  Defendants pursued an interlocutory appeal, and the Court of Appeals for the Third Circuit affirmed class certification.  *Taha v. County of Bucks*, 862 F.3d 292, 309 (3d Cir. 2017).

After engaging in discovery, the parties filed renewed cross-motions for summary judgment in September 2018, which required this Court to predict how the Pennsylvania Supreme Court would rule on two issues of first impression: the statute of limitations applicable to CHRIA violations, and the standard for determining whether a CHRIA violation is "willful" under 18 Pa. C.S.A. § 9183(b)(2).  *See Taha v. Bucks County*, 367 F. Supp.3d 320, 333 (E.D. Pa. 2019).  The Court denied both parties' motions, and the suit proceeded to trial for a jury to

determine whether Defendants' conduct was willful and, if so, the amount of punitive damages

per class member.  At the close of evidence, the jury returned a verdict finding Defendants

committed willful violations and awarded each class member $1,000 in punitive damages, the

statutory minimum amount.  *See* 18 Pa. C.S.A. § 9183(b)(2).

Final judgment was entered on July 2, 2019.  Defendants filed an appeal in the Third

Circuit, as well as several post-trial motions in this Court.  All of Defendants' post-trial motions

were denied in a single opinion, *see Taha v. Bucks County*, 408 F. Supp.3d 628, 633 (E.D. Pa.

2019), and Defendants amended their Third Circuit appeal to include this decision as well as

every interim order or judgment adverse to their interests issued during the course of the

litigation.  In early 2020, with this appeal still pending, the parties appeared before the Third

Circuit's Chief Mediator, Joseph Torregrossa, Esq., to attempt to negotiate the terms of a class

action settlement.  After three months of negotiations, an agreement was reached, and the Third

Circuit subsequently granted the parties' joint request for partial remand to allow this Court to

rule on their proposed settlement agreement.

The parties propose a claims-made settlement, providing for a minimum aggregate

payment by Defendants to the class of $3.5 million, and a maximum aggregate payment to the

class of $10 million.  Under the terms of the agreement, each class member will be entitled to

receive $600, or 60% of the jury award.  The proposal also contemplates programmatic relief for

expungement and addiction services for clients of the Bucks County Public Defender, consisting

of 5% of the difference between the aggregate amount distributed to class members and the $10

million ceiling.

The settlement agreement provides that Defendants will pay fees and expenses to class

counsel.  Defendants have agreed to pay class counsel $4 million, which would encompass

$3,538,165.34 in fees and $461,834.66 in expenses.  The proposed fee and expense award will

be paid separately from the monetary relief available for class members, and will therefore not

decrease the benefit obtained for the class.  The settlement agreement also includes a proposed

service award of $30,000 for class representative Taha, to be paid from the $10 million available

for the class.  Although Defendants filed a partial objection to class counsel's requested fee and

expense award, arguing that class counsel impermissibly failed to include certain pre-settlement

notice costs as a litigation expense, this dispute has since been resolved by the parties, with class

counsel agreeing to deduct $60,830.53 in pre-settlement notice costs from its fee and expense

award.  Accordingly, there are presently no objections either to the requested fee and expense

award or to the proposed service award.

On May 19, 2020, Plaintiff filed an unopposed motion for preliminary approval of the

parties' settlement agreement.  On June 2, 2020, following a hearing, the Court granted

preliminary approval of the settlement, subject to minor revisions, and approved the proposed

notice to class members.  The claims administrator, Analytics Consulting LLC ("Analytics"),

proceeded to publish notice of the settlement in the Doylestown Intelligencer and Bucks County

Courier Times.  Analytics also mailed, by first-class mail, a settlement notice packet to all

eligible class members.  This packet included the claimant's unique claim number and

instructions for filing a claim.  Class members could submit a claim electronically via a website

maintained by Analytics, or could mail a paper copy claim form back to Analytics.  Settlement

notice packets were mailed to 40,319 eligible claimants, and 3,374 packets were returned as

undeliverable.  These 3,374 records were then sent to Experian to identify updated addresses,

and 1,928 packets were re-mailed, leaving a total of 1,446 undeliverable claims forms.  A total of

10,232 valid class claims were received.[1]  A final settlement fairness hearing was held on

October 1, 2020.

### II.      FINAL SETTLEMENT APPROVAL

Federal Rule of Civil Procedure 23 requires that a class action "may be settled . . . only

with the court's approval."  Fed. R. Civ. P. 23(e).  Before granting final approval, a court must

hold a hearing and determine that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ.

P. 23(e)(2).  This requires a court to "independently and objectively analyze the evidence and

circumstances before it in order to determine whether the settlement is in the best interest of

those whose claims will be extinguished."  *In re Cendant*, 264 F.3d 201, 231 (3d Cir. 2001)

(quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785

(3d Cir. 1995)).

"[T]here is an overriding public interest in settling class action litigation," *In re Warfarin*

*Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004), and "[t]he law favors settlement,

particularly in class actions and other complex cases where substantial judicial resources can be

conserved by avoiding formal litigation," *Gen. Motors*, 55 F.3d at 784.  Accordingly, "when

evaluating a settlement, a court should be 'hesitant to undo an agreement that has resolved a

hard-fought, multi-year litigation.'"  *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*,

333 F.R.D. 364, 378 (E.D. Pa. 2019) (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163,

---

[1] At the time of the final settlement fairness hearing, Analytics was still in the process of reviewing and validating all of the submitted claims.  On October 23, 2020, Analytics recommended that 9,488 claims be accepted as valid, 863 claims be rejected as invalid, and 19 claims be considered pending.  Pursuant to an agreement between the parties, claimants were provided 14 days to cure invalid claims.  Analytics then updated its figures, recommending that 9,741 claims be deemed valid, 641 claims be rejected as invalid, and 3 claims be considered pending.  At this point, class counsel requested the Court intervene to rule on the validity of 275 of these claims, namely, the 3 pending claims as well as 272 of the 641 claims rejected by Analytics as invalid.  In response, Bucks represented that it did not dispute the validity of the 3 pending claims, raising the total number of undisputed valid claims to 9,744 and bringing the number of disputed claims down to 272.  The Court found all 272 disputed claims to be valid.  Analytics further represented that it had found an additional 216 valid claims, bringing the total number of valid class claims to 10,232.

175 (3d Cir. 2013)).  "The decision of whether to approve a proposed settlement of a class action

is left to the sound discretion of the district court."  *In re Nat'l Football League Players*

*Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (quoting *In re Prudential Ins. Co.*

*Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998)).

In determining whether a proposed class action settlement is fair, reasonable, and

adequate, the recently amended provisions of Federal Rule of Civil Procedure 23 require courts

to consider whether:

> (A) the class representative and class counsel have adequately represented the
> class; (B) the proposal was negotiated at arms' length; (C) the relief provided for
> the class is adequate, taking into account: (i) the costs, risks, and delay of trial and
> appeal; (ii) the effectiveness of any proposed method of distributing relief to the
> class, including the method of processing class-member claims; (iii) the terms of
> any proposed award of attorney's fees, including timing of payment; and (iv) any
> agreement required to be identified under Rule 23(e)(3); and (D) the proposal
> treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The factors set forth in Rule 23(e)(2) augment, rather than replace, the traditional factors

developed by courts to assess the fairness of a class action settlement.  *See* Fed. R. Civ. P.

23(e)(2) Advisory Committee Note ("The goal of [the Rule 23(e)(2)] amendment is not to

displace any factor, but rather to focus the court and the lawyers on the core concerns of

procedure and substance that should guide the decision whether to approve the proposal.").  In

the Third Circuit, courts must continue to analyze the factors propounded in *Girsh v. Jepson*, 521

F.2d 153 (3d Cir. 1975), which are (1) the complexity, expense, and likely duration of the

litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and

amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing

damages; (6) the risk of maintaining the class through trial; (7) the ability of the defendants to

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of

the best possible recovery; and (9) the range of reasonableness of the settlement fund to a

possible recovery in light of the attendant risks of litigation. *Nat'l Football League*, 821 F.3d at

437.  "A court may approve a settlement even if it does not find that each of these factors weighs

in favor of approval." *In re N.J. Tax Sales Certificate Antitrust Litig.*, 750 F. App'x 73, 77 (3d

Cir. 2018).  Additionally, a presumption of fairness will exist where, as here, a settlement has

been negotiated at arms' length, discovery was sufficient, the settlement proponents are

experienced in similar matters, and there are few objectors. *Warfarin*, 391 F.3d at 535.

Bearing in mind that there is some overlap between the Rule 23(e) and *Girsh* factors,

each will be considered in turn.

### a.   Rule 23(e) Factors

#### i.   *Adequacy of Representation and Arms' Length Negotiations*

Class counsel and class representative Taha have adequately represented the class during

the course of this litigation.  They have seen the litigation through a jury trial as well as two

Third Circuit appeals, and in the process have engaged in extensive discovery and motions

practice.  Having observed class counsel throughout the litigation, the Court is satisfied that

counsel vigorously represented the class.

The proposed settlement agreement is also the product of arms' length negotiations.  The

parties appeared before the Third Circuit's Chief Mediator, Joseph Torregrossa, Esq., and

negotiated the proposed agreement over the course of several months.  "[T]he participation of an

independent mediator in settlement negotiations virtually [e]nsures that the negotiations were

conducted at arm's length and without collusion between the parties." *Rose v. Travelers Home*

*and Marine Ins. Co.*, 2020 WL 4059613, at \*7 (E.D. Pa. July 20, 2020) (alterations in original)

(quoting *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, 2016 WL 4766079, at

*6 (E.D. Pa. Sept. 3, 2016)).  These factors weigh in favor of approval.

### ii.  *Adequacy of Relief*

The proposed settlement agreement provides adequate relief for the class.  First, the "relief that the settlement is expected to provide to class members" is adequate when weighed against "the cost and risk involved in pursuing a litigation outcome."  Fed. R. Civ. P. 23(e)(2) Advisory Committee Note.  Each class member will receive $600, which is 60% of what the jury awarded.  This figure is reasonable, as the risks and costs associated with the still-pending Third Circuit appeal could be significant.  This case has presented several complicated legal issues over the years, some of which go to the heart of Defendants' liability in this matter.  If the Third Circuit were to disagree with this Court's rulings on these issues, the jury verdict could be vacated, or the class could be precluded from recovery altogether.  Moreover, Defendants have indicated that, were the appeal to continue, they would seek to have the Third Circuit refer issues of first impression to the Pennsylvania Supreme Court, which could prolong the proceedings by years and further increase costs.  Given these risks, a 60% recovery is reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(2)(C)(i).

Second, the proposed agreement provides an effective method of distributing relief.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).  The claims process established by the proposed agreement is not "unduly demanding."  Fed. R. Civ. P. 23(e)(2) Advisory Committee Note.  Rather, it is quite simple:  Class members simply had to access the website maintained by Analytics and enter their claim number and a few other details.  Alternatively, class members could return their claim forms to Analytics by mail.  No additional documentation was required for a class member to submit a claim.  Further, the notice and claims process resulted in a claims rate of approximately 25%, suggesting that the process was effective.  *See, e.g.*, *Ward v. Flagship Credit Acceptance*

*LLC*, 2020 WL 759389, at \*13 (E.D. Pa. Feb. 13, 2020) (finding 20.5% participation rate to be "a very high claims rate").

Next, and as discussed further below, the requested attorneys' fee and expense award is reasonable.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).  The fee award does not decrease the benefit available to the class, and no class members have objected to the proposed fee and expense award after having received notice of the amount requested.  Further, Defendants' partial objection to class counsel's fee and expense award has since been resolved.  Finally, there are no side agreements between the parties.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).  This factor weighs in favor of approval.

### iii.  *Whether the Proposed Agreement Treats Class Members Equitably Relative to Each Other*

The proposed settlement agreement also treats class members equitably relative to each other.  *See* Fed. R. Civ. P. 23(e)(2)(D).  Each class member will receive the same amount: $600, or 60% of the jury award.  This factor weighs in favor of approval.

Accordingly, all of the Rule 23(e) factors are met.

### b.  *Girsh* **Factor Analysis**

### i.  *Complexity, Expense, and Likely Duration of the Litigation*

The first *Girsh* factor requires a court to evaluate the complexity, expense, and likely duration of the litigation.  This factor "captures the probable costs, in both time and money, of continued litigation."  *Nat'l Football League*, 821 F.3d at 437 (quoting *Warfarin*, 391 F.3d at 535-36).  As described above, if this action were to continue, the parties would likely expend a significant amount of time and money on the appeal, which could result in a remand for a new trial.  The litigation could be further protracted should the Third Circuit decide to certify issues

of first impression to the Pennsylvania Supreme Court.  Because continued litigation would

likely be lengthy and expensive, settlement is reasonable.  This factor favors approval.

### ii.   *Reaction of the Class to the Settlement*

The second *Girsh* factor asks the court to evaluate the reaction of the class to the

proposed settlement agreement.  "In an effort to measure the class's own reaction to the

settlement's terms directly, courts look to the number of and vociferousness of the objectors."

*Gen. Motors*, 55 F.3d at 812.  Courts must be cautious about inferring support based on a limited

number of objections.  *Prudential*, 148 F.3d at 318.  Thus, in most cases, "a small proportion of

objectors does not favor derailing [the] settlement." *Bell Atl. v. Bolger*, 2 F.3d 1304, 1314 (3d

Cir. 1993).

Here, a total of seven objections to the proposed settlement agreement were filed.  One of

these objections – that of Ms. Gemma Fendler – has since been withdrawn.  Ms. Fendler instead

spoke in support of the settlement at the final fairness hearing.  Only the following six objections

remain.

Dr. Jamal Aljari, a medical doctor, objects to the terms of the proposed settlement, stating

that he has lost millions of dollars due to the Bucks County Police Department releasing his

expunged criminal records to a hospital, which then denied Dr. Aljari employment.  He states

that the hospital then sent his criminal record information to the U.S. Department of Health and

Human Services National Practitioner Data Bank, where it continues to exist to this day.

Because of this, Dr. Aljari states that he has had difficulty getting insurance to practice medicine,

and cannot work in any hospital.  He asks the Court to order that his criminal records be removed

from the National Practitioner Data Bank.

The Court acknowledges the significant stress the public release of Dr. Aljari's criminal information has placed on his personal and professional life. However, the relief Dr. Aljari requests is beyond the scope of this lawsuit. To the extent Dr. Aljari has claims against parties other than Defendants, these claims will not be extinguished by the approval of the proposed settlement agreement. Further, despite his objection, Dr. Aljari has filed a claim form to participate in the settlement. Accordingly, his objection cannot be sustained.

Mr. Howard Haberstick objects to the proposed settlement, stating that due to the publication of his criminal records by Defendants, he has had substantial difficulty finding adequate employment since his incarceration and was unable to adequately care for his ailing parents. But the relief in this case is now limited to punitive damages, and does not encompass compensatory damages for Mr. Haberstick or any other class member for the individual losses they may have suffered as a result of Defendants' conduct. Further, despite his objection, Mr. Haberstick has filed a claim form to participate in the settlement. Accordingly, his objection cannot be sustained.

Mr. Eric Brinkerhoff objects to the settlement, stating that it is insufficient to vindicate the constitutional rights that, according to Mr. Brinkerhoff, have been violated by Defendants. He suggests that the Court instead provide monetary compensation to habitual offenders, individuals convicted of "heinous" felonies, and individuals who have exhausted all appeals, and grant all others either amnesty or a new trial. This relief is not authorized by the CHRIA, and is outside the scope of this lawsuit. Mr. Brinkerhoff's objection cannot be sustained.

Ms. Lisa Brocco objects to the proposed settlement, stating that $600 is insufficient to compensate her for the injuries she suffered as a result of her alleged false arrest and incarceration. She states that her reputation has been ruined, and that she has been unable to find

11

adequate employment due to her criminal history.  To the extent, however, that Ms. Brocco's

injuries do stem from Defendants' publication of her criminal records on the ILT, the Court did

not certify compensatory damages for class treatment.  Ms. Brocco's objection cannot be

sustained.

Mr. Michael Anthony Herder objects to the settlement as insufficient and asserts a claim

for $73 million, stating that he is innocent of the offenses for which he was convicted.  He states

that "this lawsuit is proof that my rights were in fact violated," and notes that he had to pay over

$600 in fines and fees associated with his cases.  There is no basis to sustain Mr. Herder's

objection.  The present suit is limited to whether Defendants violated the CHRIA by

disseminating criminal records on the ILT.  Mr. Herder's concerns are outside the scope of this

action.

Finally, Mr. Michael Leach objects to the settlement in a single sentence, providing no

reason for his objection.  An objection to a class action settlement must "state with specificity the

grounds for the objection."  Fed. R. Civ. P. 23(e)(5)(A).  Without more, there is no basis to

sustain Mr. Leach's objection.

In sum, while the Court appreciates and carefully considers each of the six objections to

the proposed settlement agreement, they do not provide a basis to deny final approval.  Further,

the percentage of class members who have objected is very small, comprising approximately

0.00015% of the 40,319 class members to whom notice was sent.  *See, e.g.*, *Cendant*, 264 F.3d at

234-35 (finding the second *Girsh* factor "weighed strongly in favor of the Settlement" where

only .0008% of the class objected).  This factor favors approval.

### iii.   *Stage of the Proceedings and Amount of Discovery Completed*

The third *Girsh* factor asks courts to evaluate the stage of the proceedings and the amount of discovery completed, in order to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Gen. Motors*, 55 F.3d at 813.  "[P]ost discovery settlements are more likely to reflect the true value of the claim and be fair." *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 578 (E.D. Pa. 2003).  As noted, this suit has been litigated for almost eight years.  There was extensive discovery, and the case has gone to trial.  It has even been to the Third Circuit on two separate occasions (and remains pending there now, subject to this Court's resolution of the present matter).  The Court is satisfied that all parties had a full appreciation of the merits of this suit before negotiating the proposed settlement agreement.  This factor favors approval.

### iv.  *Risks of Establishing Liability and Damages*

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Nat'l Football League*, 821 F.3d at 439 (quoting *Prudential*, 148 F.3d at 319).  While a trial has been conducted and a jury has issued a verdict as to Defendants' liability, this case does continue to pose risk at the appellate level where, as discussed, the resolution of several novel and complicated legal issues could result in a vacated verdict or even preclude class recovery.  These factors favor approval.

### v.  *Risk of Maintaining the Class Action Through Trial*

The sixth *Girsh* factor asks a court to consider the risk of maintaining the class action through trial, in order to evaluate whether the class action, "if tried, would present intractable management problems." *Id.* at 440 (quoting *Prudential*, 148 F.3d at 321).  Because the Third Circuit has already affirmed class certification, and because this case has already been to trial,

13

this factor is not relevant to the current inquiry and is therefore neutral.

### vi.   *Ability of Defendants to Withstand a Greater Judgment*

The seventh *Girsh* factor asks courts to assess the ability of the defendants to withstand a

greater judgment.  This factor "is most relevant when the defendant's professed inability to pay

is used to justify the amount of the settlement."  *Id.* at 440.  Class counsel asserts that Defendants

stressed during settlement negotiations that Bucks County would not have the funds to cover the

jury verdict of over $40 million, noting that the County's general fund balance was, in February

2020, only $25.5 million.  According to class counsel, Defendants have argued that the Covid-19

pandemic has only further depleted the County's available resources.  Nevertheless, should the

judgment eventually be affirmed by the Third Circuit, the Bucks County taxpayers would have to

find a way to fund the jury award.  This factor is therefore neutral.  But "it should be noted that

these are difficult economic times," and while Bucks County may be able to withstand greater

judgment, "it is more preferable to have a settlement that Defendants consider a funding priority,

as opposed to the potential for an unfunded judicial mandate following a trial and appeals years

from now."  *See Alves v. Main*, 2012 WL 6043272, at \*21 (D.N.J. Dec. 4, 2012).

### vii.   *Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of all the Attendant Risks of Litigation*

The eighth and ninth *Girsh* factors ask courts to consider "whether the settlement

represents a good value for a weak case or a poor value for a strong case."  *Warfarin*, 391 F.3d at

538.  "The factors test two sides of the same coin: reasonableness in light of the best possible

recovery and reasonableness in light of the risks the parties would face if the case went to trial."

*Nat'l Football League*, 821 F.3d at 440 (quoting *Warfarin*, 391 F.3d at 538).  "[T]he present

value of the damages plaintiffs would likely recover if successful, appropriately discounted for

the risk of not prevailing, should be compared with the amount of the proposed settlement." *Id.*

(quoting *Prudential*, 148 F.3d at 322).

As noted, each class member will receive $600, or 60% of the $1,000 jury award.  Given

that "the outcome of this litigation [remains] uncertain," and given that any continued litigation

will be "inevitably time-consuming and expensive," a 60% guaranteed recovery for class

members is reasonable.  *See N.J. Tax Sales*, 750 F. App'x at 82.  It is also "well within a

reasonable settlement range when compared with recovery percentages in other class actions."

*Warfarin*, 391 F.3d at 538-39 (approving settlement for approximately 33% of best possible

recovery); *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 WL 1922902, at \*21 (E.D. Pa. Apr. 21,

2020) (approving settlement for approximately 11.5% of best possible recovery).  These factors

favor approval.

In sum, the *Girsh* factors favor approval.  For all the reasons stated above, the settlement

agreement is fair, reasonable, and adequate to protect the interests of the class members.

Plaintiff's motion to approve the settlement shall be granted.

### III.     ATTORNEYS' FEES AND EXPENSES

Under the Federal Rules of Civil Procedure, "[i]n an action certified as a class action, the

court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by

the parties' agreement."  Fed. R. Civ. P. 23(h).  Courts must conduct a "thorough judicial

review" of class counsel's request for a fee award, *Gen. Motors*, 55 F.3d at 819, using either the

lodestar method or the percentage-of-recovery method.  The percentage-of-recovery method is

"generally favored in common fund cases," *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300

(3d Cir. 2005), as it "allow[s] courts to award fees from the fund 'in a manner that rewards

counsel for success and penalizes it for failure,'" *Prudential*, 148 F.3d at 333 (quoting *Gen.*

*Motors*, 55 F.3d at 821).  The lodestar method, on the other hand, is employed most often in the statutory fee shifting context, or in cases where the nature of the settlement prevents the court from determining its exact value.  *Id.*

"A district court has discretion to determine which type of case the settlement most resembles and which calculation method to apply."  *Dungee v. Davison Design & Dev. Inc.*, 674 F. App'x 153, 156 (3d Cir. 2017).  Here, counsel urges that the lodestar method is appropriate. The Court agrees.  The CHRIA is a fee-shifting statute, allowing individuals who prevail on their claims to receive an award for attorneys' fees and costs.  18 Pa. C.S.A. § 9183(b).  "[A]s a general rule, the method of determining reasonable attorneys' fees under fee-shifting provisions in Pennsylvania is the lodestar method."  *Branch Banking & Trust Co. v. Angino Law Firm, P.C.*, 809 F. App'x 102 (3d Cir. 2020).  Further, because this is a claims-made settlement – the total value of which is dependent on how many individuals end up submitting claims – the lodestar method is appropriate.  *See Dungee*, 674 F. App'x at 156 (affirming district court's application of the lodestar method to a claims-made settlement).  Accordingly, the reasonableness of the proposed fee and expense award will be assessed under the lodestar method.

### a.  Lodestar Analysis

Courts perform the lodestar analysis by first "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys."  *Rite Aid*, 396 F.3d at 305.  The resulting figure is the lodestar amount, which is a "presumptively reasonable fee" for class counsel's services.  *See Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253, 265 n.5 (3d Cir. 2002).  After calculating the lodestar amount, the court

will then calculate the lodestar multiplier, determined by dividing the requested fee by the

lodestar figure. *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Where this

calculation results in a "significant negative multiplier," it will "suggest[] that [the plaintiff's] fee

request is reasonable." *Comcast*, 333 F.R.D. at 389.

Class counsel has submitted summaries of each firm's fees and expenses indicating that

they expended a total of 11,878 hours on this litigation, resulting in a lodestar of $6,304,594.

The number of hours billed by these firms is high but reasonable, given the length of this matter

as well as its complexity. Class counsel's hourly billing rates are reflective of the skill and

experience of the lawyers involved. These rates range from $100 per hour to $775 per hour, and

cumulatively result in an average hourly rate of approximately $530 per hour. This is consistent

with the prevailing market rate in this District for similar services. *See, e.g.*, *Harshbarger v.*

*Penn Mutual Life Ins. Co.*, 2017 WL 6525783, at *6 (E.D. Pa. Dec. 20, 2017) (finding an

average hourly rate of $508 to be "well within the range of what is reasonable and appropriate in

this market"). Class counsel's $6.3 million lodestar figure is reasonable.

Further, although class counsel presents a lodestar of $6.3 million, the agreement reached

by the parties, if approved, will result in class counsel receiving a significantly smaller sum. The

agreement provides for class counsel to receive a total award of $4 million, inclusive of fees and

expenses. Class counsel has reported a total of $461,834.66 in expenses accrued during the

course of this litigation, resulting in a proposed fee award of $3,538,165.34. This figure divided

by the lodestar amount results in a negative multiplier of approximately .56. In other words,

counsel will only be compensated for approximately 56% of their time worked during the course

of this litigation. This negative multiplier "provides additional support for the requested

attorneys' fees." *Blofstein v. Michael's Family Rest., Inc.*, 2019 WL 3288048, at *11 (E.D. Pa.

July 19, 2019).

In sum, the number of hours billed by class counsel is reasonable given the lengthy

history of this highly contested litigation.  The average hourly billing rates submitted by class

counsel is also reasonable, especially given that counsel will be compensated for only a fraction

of the time it spent pursuing these complicated claims on behalf of the class.  Notably, no class

members have objected to the proposed fee award.  Plaintiff's proposed fee award shall be

granted.

### b.   Reasonable Litigation Expenses

"Counsel for a class action is entitled to reimbursement of expenses that were adequately

documented and reasonably and appropriately incurred in the prosecution of the class action."

*Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 WL 1922902, at *32 (E.D. Pa. Apr. 21, 2020)

(quoting *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001)).  Class

counsel has adequately documented their expenses, which amount to a total of $461,834.66 and

comprise costs associated with, among other things, professional fees (such as those associated

with expert witnesses), computer research, copying, transportation, and pre-settlement notice

distribution.  As noted, payment of these costs will not decrease the benefit obtained for the

class.  These expenses were necessary for class counsel's competent handling of this case, and

are reasonable.  Plaintiff's proposed expense award shall be granted.

### IV.    SERVICE AWARD

Finally, class counsel requests a $30,000 service award for class representative Taha, to

be paid from the $10 million available for the class.  "Payment awards to class representatives lie

within the discretion of the trial court and may be provided as a reward for the benefit visited on

the class."  *Hall v. Accolade, Inc.*, 2020 WL 1477688, at *10 (E.D. Pa. Mar. 25, 2020) (quoting

18

*In re Plastic Tableware Antitrust Litig.*, 1995 WL 723175, at \*2 (E.D. Pa. Dec. 4, 1995)).  Such

awards must be closely reviewed in light of the "fear that incentive awards may lead named

plaintiffs to expect a bounty for bringing suit or to compromise the interests of the class for

personal gain." *Altnor v. Preferred Freezer Servs.*, 197 F. Supp.3d 746, 770 (E.D. Pa. 2016)

(quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)).  To determine the propriety of a

service award, courts evaluate (1) the risk involved for the named plaintiff in pursuing the

litigation; (2) any personal difficulties suffered by the named plaintiff in light of the litigation;

(3) the duration of the litigation; (4) the degree of the named plaintiff's personal involvement in

the litigation; and (5) the named plaintiff's personal benefit solely in his capacity as a member of

the class.  *McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, at \*3 (E.D. Pa. June 4, 2014).

Class representative Taha has expended a substantial amount of his time for the benefit of

the class.  As noted, this litigation has been ongoing for almost eight years, and during this time

Taha has participated in extensive discovery and served as a witness at trial.  As class counsel

notes, though Taha's criminal record has been expunged, his criminal history will be forever

public due to this litigation.  Further, the proposed service award, while high, is nevertheless "in

line with awards in similar class action litigation." *See In re Janney Montgomery Scott LLC*

*Financial Consultant Litig.*, 2009 WL 2137224, at \*12 (E.D. Pa. 2009) (awarding each named

plaintiff $20,000, where the total settlement was $2.8 million); *see also Godshall v. Franklin*

*Mint Co.*, 2004 WL 2745890, at \*6 (E.D. Pa. Dec. 1, 2004) (awarding each named plaintiff

$20,000, where the total settlement was $1,125,000); *Bonett v. Educ. Debt Servs., Inc.*, 2003 WL

21658267, at \*7 (E.D. Pa. May 9, 2003) (awarding named plaintiff $4,000, where the total

settlement was $22,000).  No class member has objected to Taha's proposed service award.

Plaintiff's motion for a $30,000 service award shall be granted.

## V.      CONCLUSION

For the foregoing reasons, Plaintiff's motions for final approval of the class action

settlement and for an award of attorneys' fees and reimbursement of expenses as well as for a

service award for class representative Taha shall be granted.  The parties' amended settlement

agreement shall be finally approved.

An appropriate order follows.

**November 30, 2020**                                      **BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**