IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DARYOUSH TAHA,**  Plaintiff, | CIVIL ACTION |
| v. | |
| **BUCKS COUNTY,** *et al.*,  Defendants. | NO.  12-6867 |

**MEMORANDUM OPINION**

Plaintiff Daryoush Taha has obtained a default judgment against Defendants Mugshots.com, LLC and Unpublish LLC d/b/a Mugshots.com, LLC ("Mugshots"), and now requests an assessment of damages.

In September 1998, Taha was arrested in Bucks County, Pennsylvania and charged with harassment, disorderly conduct, and resisting arrest.  He was held for several hours in the Bucks County Correctional Facility ("BCCF"), where his booking photo was taken.  Subsequently, the county court issued an order directing the Clerk of Courts of Bucks County, the Bucks County District Attorney, the district court, and the arresting agency to expunge Taha's "arrest and other criminal records," and directing Bensalem Township to retrieve all arrest records from federal and state agencies that had been issued the information.

Several years later, in January 2011, Bucks County and BCCF created an "Inmate Lookup Tool" through which they published on the internet information about individuals held or incarcerated at BCCF from 1938 onward including information from Taha's 1998 arrest: a head shot of Taha; his date of birth; sex; height; weight; race; hair color; eye color; citizenship; date of his commission to the facility; date of his release from the facility; case number for the crime charged; and a notation reading "DC, HARASS" listed under "Charge Information."  The

uploaded information listed his "current location" as the "MAIN" facility in "BUCKS COUNTY."

A number of private companies—including Mugshots—which crawl the internet to collect photographs and data found Taha's expunged criminal record and his booking photo from the 1998 arrest and republished it on their websites, with the alleged aim of earning advertising revenue and charging fees for data removal. In late 2011, Taha's cousin, a surgeon living in Canada, called Taha and informed him that his criminal record was publicly available online. Taha alleges that Mugshots' actions "damaged his reputation" and caused him "anxiety, frustration, emotional distress, [and] embarrassment."

Taha's complaint against Mugshots asserted a claim for false light/invasion of privacy.[1] Mugshots did not answer or otherwise respond. At Taha's request default was entered and a hearing held on his motion for default judgment after which the Court granted the motion (thereby establishing Mugshots' liability on his false light claim) and issued an injunction directing Mugshots to remove Taha's expunged criminal record history information from its websites. The issue of damages was not addressed at that time but is before the Court now in the form of a Motion for an Assessment of Damages.

"A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal quotation marks omitted). "If the damages are not for a sum certain or for a sum which can by computation be made certain, the

---

[1] Under Pennsylvania law, a plaintiff establishes false light/invasion of privacy by showing: "(a) the false light in which the [plaintiff] was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Lin v. Rohm & Haas Co.*, 293 F. Supp.2d 505, 522 (E.D. Pa. 2003) (quoting *Curran v. Children's Serv. Ctr.*, 578 A.2d 8, 12 (Pa. Super. 1990)).

court may conduct such hearings or order such references as it deems necessary and proper." *Id.* (internal quotation marks omitted).

During a hearing to assess damages and at an earlier deposition, Taha testified that Mugshots' conduct caused him to suffer significant humiliation and embarrassment in front of his family and colleagues. He described how Mugshots' posting of his expunged criminal record has tarnished his reputation with his family and his professional clients. Specifically, when he learned that Mugshots had published his criminal history online, Taha was outraged. He was unable to eat, lost weight, and was unable to sleep. Coming from a "very proud" and "very educated" Persian family, he testified that in his culture, "[w]hen the family name is tarnished, everybody's name is tarnished." Because of Mugshots' conduct, Taha's reputation with his family was substantially diminished. Further he feared his professional reputation was harmed: he was looking for work at the time Mugshots posted his expunged record, and testified that all any prospective employer had to do was "punch in [his] name, Google [his] name" and the Mugshots page with his criminal history would come up. He explained: "An employer can review your resume but never call you back. . . . It's next to impossible to know what the extent of the damage is."

There is however, in Pennsylvania, a framework to determine Plaintiff's damages in a false light/invasion of privacy case: Damages are recoverable "for: '(a) the harm to his interest in privacy resulting from the invasion; (b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and (c) special damages of which the invasion is a legal cause.'" *In re Lansaw*, 424 B.R. 193, 201 (W.D. Pa. 2010) (quoting Restatement (Second) of Torts § 652H). Taha does not seek special damages. He does seek mental and emotional distress damages, premised on the significant humiliation, anger, and

3

embarrassment he experienced as a result of Mugshots' actions. But, generally, to obtain such damages on a false light claim, "expert medical testimony is necessary in order to show both the emotional distress itself and that the plaintiff's particular distress is the kind that normally results from the particular invasion of privacy." *Wecht v. PG Publ'g Co.*, 725 A.2d 788, 791 (Pa. Super. 1999), *appeal denied*, 743 A.2d 922 (Pa. 1999). Taha has introduced no such evidence and, thus, he may not recover damages for his mental and emotional injuries.

Taha may, however, recover for injury to his reputation. A plaintiff who succeeds on a false light/invasion of privacy claim is entitled to recover for "the harm to his interest in privacy resulting from the invasion." *In re Lansaw*, 424 B.R. at 201 (quoting Restatement (Second) of Torts § 652H). Because Mugshots publicly placed Taha in a false light, he "may recover damages for the harm to his reputation from the position in which he [was] placed." Restatement (Second) of Torts § 652H, comment a.

So what amount of damages to award? Reputational injury is not easy to value. Compounding the difficulty, Pennsylvania case law provides little guidance on how to evaluate and measure reputational harm in the false light context. In situations where a plaintiff's injury "does not readily translate into dollar amounts," courts considering default judgment damages often look to comparable cases "to establish the appropriateness of the award." *See Doe v. Whitebread*, 2017 WL 590272, at *4 (M.D. Pa. Feb. 14, 2017) (quoting *Mathie v. Fries*, 121 F.3d 808, 814 (2d Cir. 1997)) (valuing emotional damages in the context of a Section 1983 claim). Thus, the damages awarded in other false light actions will be instructive. Moreover, because false light/invasion of privacy "is closely allied to the law of defamation," *Weinstein v. Bullick*, 827 F. Supp. 1193, 1202 (E.D. Pa. 1993) (quoting *Fogel v. Forbes, Inc.*, 500 F. Supp. 1081, 1088 (E.D. Pa. 1980)), awards in defamation cases can also help inform Taha's damages

award.

In one recent defamation suit, a local newspaper ran a front-page article reporting that the plaintiff, an orthopedic surgeon, had been suspended from his position at a hospital due to "professional misconduct regarding his treatment of an older female patient." *Menkowitz v. Peerless Publ'ns, Inc.*, 211 A.3d 797, 799 (Pa. 2019). The language of the article implied that the plaintiff had engaged in sexual misconduct, which was not the case. *Id.* at 799-800. The plaintiff brought suit against the newspaper, and the parties went to trial. In connection with his defamation claim, the plaintiff testified that "hospitals terminated his privileges and attorneys ceased using him as an expert witness." *Id.* at 800. Further, the plaintiff presented evidence that others in the community assumed he had been "indicted on charges relating to improper sexual conduct with patients." *Id.* Among other relief, the jury awarded the plaintiff $200,000 for the harm caused to his reputation. *Id.*

In a defamation and false light case, the plaintiff, an animal rights activist, allegedly suffered emotional distress and reputational injury resulting from a smear campaign in which she was accused of being a radical, of having an inappropriate sexual relationship with a dog breeder, and implied she was taking bribes. *See Stephens v. Barbin*, 2015 WL 12805926 (Pa. Com. Pl.) (Verdict and Settlement Summary). A jury awarded the plaintiff $50,000 for defamation and/or false light. *Id.* In another case, the plaintiff's ex-boyfriend posted her photograph on at least eight publicly-available websites, falsely commenting that she was a "pathological liar". *See Kane v. Hochman*, 2018 WL 8262552 (N.J. Super.) (Verdict and Settlement Summary). The plaintiff sought damages for emotional distress and reputational injury, and was awarded $200,095.25. *Id.* A plaintiff was awarded $202,000 in a slander and malicious prosecution case for reputational injury and emotional distress after his employer

falsely informed the police that the plaintiff had committed theft, resulting in the plaintiff's arrest and leaving him unable to find comparable work. *Jones v. Loews Phila. Hotel*, 2008 WL 2581386 (Pa. Com. Pl.) (Verdict and Settlement Summary). Another plaintiff, a teacher, was awarded $508,000 for loss of reputation, lost credibility in the community, and diminished ability to seek work, when her employer falsely accused her of helping students cheat and terminated her employment. *Gallagher v. Archdiocese of Phila.*, 2016 WL 7987950 (Pa. Com. Pl.) (Verdict and Settlement Summary). In another defamation case, the plaintiff, a former chairman of the Pennsylvania Convention Center, was awarded $1.5 million for the reputational injuries he suffered when a newspaper published and then re-published an article accusing him of engaging in self-dealing by directing thousands of dollars in secret legal fees to his private law firm. *Riley v. Journal Register East, Inc.*, 2016 WL 7156417 (Pa. Com. Pl.) (Verdict and Settlement Summary).

These cases reveal damages awards typically ranging in value from a low of $50,000 to a high of $500,000, with outliers in the millions. Although none of them present the same fact scenario alleged here, this range is instructive.

Here, Taha has testified that his reputation with his family and friends was significantly diminished when Mugshots disseminated his expunged criminal record. His mother called his conduct "shameful" and accused him of tarnishing the family name. He has testified that his reputation with his professional clients has been damaged as a result of Mugshots' actions. Mugshots published Taha's criminal record and booking photo on the internet, which inevitably made this information available to a worldwide audience. The information published by Mugshots is the sort of information that when publicized will almost certainly damage an individual's reputation. *See Taha v. County of Bucks*, 862 F.3d 292, 305 (3d Cir. 2017) (noting

6

"the particular harms that can be wrought by the release of someone's criminal history information").  Certainly in an age when it is a widespread practice for employers to conduct an online search on the background of prospective employees, any job application by Taha would most likely entail revelation of the information posted about him online by Mugshots.

At the same time, Taha testified that he currently enjoys a management position in a profession which allows him to interact with some of "the largest corporations on earth," including Amazon, eBay, and CBS.  Thus, while the harm Mugshots caused to Taha's reputation may have had some impact on his professional opportunities, this impact has not, in Taha's case, been debilitating.  And while Taha has testified in detail about how his reputation was diminished among his family members, it is not apparent from his testimony whether others in the community were aware of the published information and thought less of Taha as a result.  Moreover, although it is of course impossible to say who now has access to Taha's expunged criminal records because of Mugshots' actions, Mugshots has been enjoined from posting Taha's information on their websites.  Weighing all of these considerations, and taking into account the range of damages typically awarded for similar injuries, the Court finds a damages award of $150,000 appropriate in this case.

An order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**